JOHNSON and wife, Appellants, vs. SHELL OIL COMPANY, Respondent.

*December 4, 1956—January 7, 1957.*

For the appellants there were briefs and oral argument by *John E. Reilly* of Milwaukee.

For the respondent there was a brief by *Burlingame, Gibbs & Roper* of Milwaukee, and oral argument by *Wayne J. Roper* and by *Irving Slifkin* of New York, N. Y.

STEINLE, J. The plaintiff, LaCroy Johnson, successfully operated a gasoline station owned by the defendant, Shell Oil Company, in the city of Milwaukee from 1945 until the spring of 1951, when he and his wife purchased a tract of land consisting of about one acre at 683 South Hawley road, West Allis, upon which was located a gasoline and service station, and where Johnson thereafter conducted a filling and service-station business. Previous to the purchase of the property by the plaintiffs, the defendant had leased it from the former owner and had operated it. The defendant, through an employee, R. A. Ramaker, negotiated the purchase transaction for the plaintiffs, and procured

the necessary financing for them. The price of the property was $22,000 and Ramaker arranged for a loan of $16,000 for the Johnsons from the Bank of Kewaskum to enable them to buy the property. After the purchase of the property, the plaintiffs leased the station to the defendant for a ten-year term from May 1, 1951, until April 30, 1961, with an option to extend the lease for an additional five-year period. Rent was to be paid by the defendant at the rate of one and one-half cents for each gallon of gasoline delivered to the station, with a $50-minimum rental payment per month. It was agreed that the defendant was to pay all rentals under the lease, to the bank. The defendant was given the option to terminate the lease upon thirty days' notice, at any time. There was also provision that the defendant was privileged to terminate the lease upon thirty days' notice should Johnson fail to maintain the premises in good condition and repair, or fail to rebuild promptly any of the property destroyed in any manner, or fail to pay taxes, etc. If, without defendant's fault, the licenses and permits of the station were not in existence, or if the business or the property was used for illegal purposes, the defendant was privileged to terminate the lease on five days' notice. On the day when the afore-mentioned lease was executed, the defendant subleased the premises to the plaintiff, LaCroy Johnson, for a term commencing May 1, 1951, and ending April 29, 1961, with right of extension of five years provided that the defendant itself had renewed its own lease of the property for such period. The rent payable by Johnson to the defendant under the sublease was at the rate of one cent for each gallon of gasoline delivered to the premises, and the defendant was given the right to terminate the sublease within thirty days after the expiration of any year during the term in the event that Johnson failed to purchase at least 144,000 gallons of gasoline from the defendant during

the year. Neither lease contained a provision that Johnson was privileged to terminate the same for any cause.

The "dealer's sales agreement" was a written contract executed on the same day as the leases. It afforded the plaintiff, LaCroy Johnson, the right to purchase products from the defendant at established dealer prices, in any quantities to be ordered by him, and also the right during the continuance of the contract to use the defendant's trade-mark, trade name, and its color scheme of advertising in connection with his sale of its products at the station, but not to use such trade-marks, etc., in connection with the sale of products purchased by Johnson from other concerns.

Before Johnson started the operation of the station in question, the defendant made certain improvements to the property which included the construction of two new approaches to the station that were sunk to the grade level of the street; the addition of an island for the service of customers; the addition of a light pole; the painting of the building. It appears without dispute that the contracts do not prohibit Johnson from selling products of other concerns, including gasoline, or that they prohibit the use of pumps other than those used for the sale of the defendant's gasoline. The plaintiff did not purchase 144,000 gallons of gasoline annually, but the defendant did not seek termination of the lease because of plaintiff's failure in such regard, nor for any other cause. Johnson now desires to sell the property free and clear of the defendant's lease.

By his application for summary judgment Johnson sought a ruling that the contracts are null and void for the reason that they violate the antitrust laws. The Shell Oil Company moved for summary judgment in its favor dismissing the complaint for the reason that the contracts are in all respects valid.

In its memorandum decision the trial court stated:

"It is inconceivable to the court that the agreements between the parties to this action restrain or stifle competition or tend to injury or detriment to the public generally, and it is, therefore, held that the motion of the defendant for summary judgment dismissing the complaint on the merits must be granted."

On this appeal it is the position of the plaintiffs that the agreements must be considered together and that they violate the provisions of sec. 133.01, Stats., principally for the reason that the defendant has retained a right to terminate the lease in the event that Johnson does not purchase 144,000 gallons of gasoline from the defendant annually.

In so far as material sec. 133.01, Stats., provides:

"(1) Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. Every combination, conspiracy, trust, pool, agreement, or contract intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state, to be produced or sold therein or constituting a subject of trade or commerce therein, or which combination, conspiracy, trust, pool, agreement, or contract shall in any manner control the price of any such article or commodity, fix the price thereof, limit or fix the amount or quantity thereof to be manufactured, mined, produced, or sold in this state, or fix any standard or figure in which its price to the public shall be in any manner controlled or established, is hereby declared an illegal restraint of trade. . . ."

The particular provision of sec. 133.01 (1), Stats., in question was interpreted by this court in *State v. Lewis & Leidersdorf Co.* (1930), 201 Wis. 543, 553, 554, 230 N. W. 692. There, Mr. Justice FOWLER, speaking for the court, said:

"The word 'supply' covers not only the idea of the quantity of cigars but also that of the brands and sizes of cigars that may be sold in Milwaukee county. Combination and conspiracy to restrain competition in supplying cigars to retailers

so as to eliminate from the retail market all kinds of cigars except those exclusively handled by defendants are alleged. The necessary effect of this is to deprive the public of choice in the cigars they will buy, and to cut off supply from the portion of the public who prefer brands of cigars other than those supplied by the defendants. This idea is plainly within the language of the statute banning every combination 'intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state.' Control of price and quantity are especially mentioned, but control of supply in other ways than quantity is also covered. Under many decisions anything that 'prejudices the public interests by unduly restricting competition or unduly obstructing the course of trade' falls within the prohibition of the statute. *Nash v. U. S.,* 229 U. S. 373, 376, 33 Sup. Ct. 780."

The contracts in the case at bar do not limit the supply or amounts of the commodities sold at the station. They do not eliminate other brands from the market or deprive the public of choice. It appears without dispute that the plaintiff is not prohibited or prevented from installing pumps of other gasoline concerns at the station and disposing of gasoline other than that of the defendant from such pumps. A restriction such as appears in paragraph 7 of the dealer's sales agreement prohibiting the disposing of anything but Shell products under Shell's trade-marks and trade names, and through Shell gasoline tanks, is nonviolative of a statutory provision such as that in question. *Federal Trade Comm. v. Sinclair Refining Co.* (1923), 261 U. S. 463, 43 Sup. Ct. 450, 67 L. Ed. 746. The lease to Johnson does not contain any restriction as to the use to which he can put the property. It appears without dispute that Johnson had a substantial income from the property by virtue of his activities in the repair of automobiles, tune ups, wash jobs, the sale of accessories, tires, and additives, none of which are Shell products.

Plaintiffs contend that the lease to Johnson and the dealer's sales agreement are requirement contracts such as have been held to be in restraint of trade in cases as *Standard Oil Co. v. United States* (D. C. Cal. 1949), 78 Fed. Supp. 850, 337 U. S. 293, 69 Sup. Ct. 1051, 93 L. Ed. 1371, and *United States v. Richfield Oil Corp.* (S. D. Cal. 1951), 99 Fed. Supp. 280. In each of those cases it was established that there was a substantial restraint upon a sizable segment of the market. In the instant situation it appears that but a minute portion of the market in Wisconsin would be affected by the limitation in the lease. It has long been the rule in this state that agreements although in partial restraint of trade, where effected for a proper purpose and limited in time and scope and otherwise reasonable are not invalid. In *Wisconsin Creameries, Inc., v. Johnson* (1932), 208 Wis. 444, 449, 243 N. W. 498, it was said:

"Coming now to the merits of the case, it is argued that the contracts between Ebbe, Panter, and Otto are void because they are in restraint of trade. The contracts each contained a clause to the effect that the buyer or lessee of certain equipment described therein, for a period fixed in the contract, agrees to buy and use exclusively and to the extent of his requirements, ice cream, ices, and other dairy products sold by the plaintiff, at certain specified prices.

"These contracts are attacked on the ground that being exclusive sales contracts they are void as against public policy. Contracts of this character have been so frequently upheld that it is considered sufficient to cite the cases which sustain them. *E. L. Husting Co. v. Coca Cola Co.* 205 Wis. 356, 237 N. W. 85, 238 N. W. 626; *Rose v. Gordon,* 158 Wis. 414, 149 N. W. 158; *Butterick Pub. Co. v. Rose,* 141 Wis. 533, 124 N. W. 647."

See also *Rose v. Gordon* (1914), 158 Wis. 414, 149 N. W. 158; *National Refining Co. v. Cox* (1933), 227 Mo. App. 778, 57 S. W. (2d) 778; and *Cunningham v. Esso Standard Oil Co.* (Del. 1955), 118 Atl. (2d) 611.

In *Cottington v. Swan* (1906), 128 Wis. 321, 323, 107 N. W. 336, it was said:

"The vital question in the consideration of every such contract is whether the restraint imposed is reasonable under the circumstances with reference to 'the situation, business, and objects of the parties,' and if 'the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests of the party in whose favor it is imposed, reasonable as between them and not specially injurious to the public, the restraint will be held valid.' "

It cannot be held that the requirement under attack was not for a just and honest purpose, or was not for the protection of the legitimate interests of the party in whose favor it was imposed, or that it was not reasonable as between the parties, or that it was specially injurious to the public. It does not appear from the record that it unduly restricts or unduly obstructs the course of trade. In his adverse examination incorporated in an affidavit filed in support of defendant's motion for summary judgment, Johnson stated that he had no knowledge of any competitor being prejudiced by virtue of the arrangement in the lease. There is no indication of record that the challenged arrangement prejudiced the interests of the public. The claim that it may reasonably be anticipated that the defendant will negotiate similar arrangements with others for the purpose of gaining monopoly of the market, is not substantiated by the record.

By making the improvements to the station, the defendant had an investment for which it was entitled to be remunerated. The protection which it afforded to itself in such respect by its requirement of the minimum amount of gasoline to be purchased by Johnson for the limited period of the contracts, appears reasonable. At most it was a partial restraint, limited as to time and extent of purchases, and did not im-

pede the right of Johnson to purchase and sell products of defendant's competitors upon the premises in quantities as he chose. In *Federal Trade Comm. v. Sinclair Refining Co.* (1923), 261 U. S. 463, 43 Sup. Ct. 450, 67 L. Ed. 746, the court noted that the petroleum industry has been and remains highly competitive. Actually the defendant set Johnson up in business for himself by establishing the outlet not only for its own benefit, but for that of others as well. It seems that by such action the opportunity for competition was enhanced, rather than diminished. The provision in the lease relating to payment of the rentals by the defendant to the bank manifestly was for the bank's protection in the matter of its collection of payment of the loan from the bank of Johnson.

*By the Court.*—Judgment affirmed.

WINGERT, J., took no part.