STATE, Respondent, vs. LEWIS AND LEIDERSDORF COMPANY, imp., Appellant.

*April 2—April 29, 1930.*

For the appellant there was a brief by *Lenicheck, Boesel & Wickhem* of Milwaukee, attorneys, and *Frank T. Boesel* and *Lorin Kay,* both of Milwaukee, of counsel, and oral argument by *Mr. Boesel* and *Mr. Kay.*

For the respondent there was a brief by the *Attorney General, George A. Bowman,* district attorney for Milwaukee county, and *C. Stanley Perry,* assistant district attorney, and oral argument by *Mr. Perry.*

FOWLER, J. The nature of the action may be briefly stated to be to enjoin the above named defendant, General Cigar Co. Inc., and G. H. P. Co. Inc., from carrying out an agreement and practices in violation of the statutes prohibiting combinations in restraint of trade and tending to create monopoly, and incidentally to recover a penalty for violation of such statute. The defendant Lewis and Leidersdorf Company demurs to the complaint on the ground of insufficiency of facts. The circuit court overruled the demurrer. The Lewis and Leidersdorf Company assigns the ruling of the court as error.

That the two forms of relief demanded may be had in the same action is held in *State v. P. Lorillard Co.* 181 Wis. 347, 193 N. W. 613. Jurisdiction is obtained by reason of the injunctional relief sought, and the other relief is granted incidentally to comprise the entire relief sought by the State in a single action.

The complaint comprises fifteen pages of the printed case. It is difficult to condense it to the reasonable bounds of an opinion. It may, we believe, be fairly and sufficiently summarized as stating, in substance, particularly or by reasonable intendment, as follows: The Lewis and Leidersdorf Company is a Wisconsin corporation with its principal office in Milwaukee, doing business at wholesale and retail as a dealer in cigars and such other goods as are customarily sold in connection with the retailing of cigars. The General Cigar Co. Inc. and the G. H. P. Co. Inc. are corporations of New York and Delaware, respectively, doing business in this state as wholesale dealers in cigars with jobbing offices in Milwaukee. In 1927 the defendants combined and conspired to monopolize or attempt to monopolize the wholesale cigar trade in Milwaukee county and to restrain and prevent competition in the wholesaling of cigars in said county, and have since been and now are acting in furtherance of such conspiracy, and have unlawfully restrained trade and are creat-

ing a monopoly in such trade and will continue so to act unless enjoined.

The facts by which the combination and conspiracy are alleged to have been effectuated may be summarized as follows: The wholesale cigar dealers in Milwaukee operate under agreements by which each has the exclusive right to sell in Milwaukee county the brands which it handles (except that each may handle all brands locally manufactured) and each wholesaler deals in tobacco and smokers' articles and other goods commonly sold in connection with the retailing of cigars. Besides about 100 tobacco stores and groceries, soft-drink parlors and the like in number not given, there are about 400 drug stores in Milwaukee retailing cigars and about fifty cigar stands in hotels, office buildings, and like places in the downtown district of Milwaukee. The latter 450 are the common retail outlets of manufacturers and jobbers. These outlets are essential to the wholesaling of cigars in Milwaukee, and manufacturers and jobbers are dependent upon their retail facilities for successful operation of their business. The Lewis and Leidersdorf Company has entered into contracts with dealers operating 170 of these outlets whereby such dealers agree to purchase their entire stock from the Lewis and Leidersdorf Company and to display for sale in their counters atop of all other cigars as the Lewis and Leidersdorf Company shall designate certain brands of which some one of the defendants has exclusive sale. To induce operators of said outlets to enter into said contracts the Lewis and Leidersdorf Company agrees to give said dealers discounts in excess of those allowed to dealers not so contracting and to take from them at full value all unsalable goods in exchange for other goods of equal value. The Lewis and Leidersdorf Company is the largest jobber of cigars in Milwaukee. The other jobbers each handle only a few brands, and alone none can furnish sufficient variety to retailers to enable them to conduct business successfully.

The Lewis and Leidersdorf Company has the exclusive handling of more brands than any other jobber, and by reason thereof and of an arrangement with the two other defendants occupies a dominant position in the wholesale cigar and tobacco business in Milwaukee. By reason of said arrangement with defendants and the use of its said contracts the Lewis and Leidersdorf Company is able to and does supply to retailers complete stocks adequate for successful business, comprising a majority of the most popular and leading brands of cigars in the Milwaukee retail market, and has destroyed the greater part of the wholesaling formerly done by manufacturers and other jobbers in Milwaukee with the retailers operating under said exclusive dealing contracts with the Lewis and Leidersdorf Company. The use of said contract is intended to and its operation does and will continue to eliminate from the retail trade in Milwaukee all brands of cigars not exclusively handled by the defendants, and is intended to create and its operation is creating a monopoly by the defendants of the sale of cigars in Milwaukee. The defendants General Cigar Co. Inc. and the G. H. P. Co. Inc. are alleged to be parties with the Lewis and Leidersdorf Company to a combination and conspiracy to attempt to create said monopoly and to restrain trade in violation of the statute through agreeing with the Lewis and Leidersdorf Company, with the common intent to effectuate such monopoly and restraint of trade and to drive other wholesalers out of business in Milwaukee, that they will not deal with any retailers who have entered into said contract with the Lewis and Leidersdorf Company; that they will sell to the Lewis and Leidersdorf Company at a discount sufficient to enable it to resell their brands and give the special discounts provided for in said contract and at a less price than they will sell to other jobbers; and will permit the Lewis and Leidersdorf Company to list and display their exclusive brands as provided in its said contract.

The facts above stated are claimed to constitute a violation of sec. 133.01, Stats. This statute, so far as the facts stated in the complaint may be claimed to violate its terms, may for convenience be deleted to read and its paragraphs numbered as follows:

"(1) Every contract or combination in the nature of a conspiracy in restraint of trade is illegal. (2) Every combination, conspiracy, or contract intended to restrain or prevent competition in the supply of any article in general use in this state, to be produced or sold therein, is an illegal restraint of trade. (3) Every person or corporation who shall become a party to any contract, combination, conspiracy, or agreement herein declared to be in restraint of trade, or who shall combine or conspire with any other person or corporation to monopolize or attempt to monopolize any part of the trade in this state, shall forfeit for each such offense not less than one hundred dollars nor more than five thousand dollars."

The complete statute and secs. 1 and 2 of the Sherman Anti-Trust Act, necessary to consider in its construction, are for ready reference set out in the marginal note.[1]

---

[1] Sec. 133.01, Wis. Stats.: "Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. (1) Every combination, conspiracy, trust, pool, agreement or contract intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state, to be produced or sold therein or constituting a subject of trade or commerce therein, or (2) which combination, conspiracy, trust, pool, agreement or contract shall in any manner control the price of any such article or commodity, fix the price thereof, (3) limit or fix the amount or quantity thereof to be manufactured, mined, produced or sold in this state, or fix any standard or figure in which its price to the public shall be in any manner controlled or established, is hereby declared to be an illegal restraint of trade. Every person, corporation, copartnership, trustee or association who shall either as principal or agent become a party to any contract, combination, conspiracy, trust, pool or agreement herein declared unlawful or declared to be in restraint of trade, or who shall combine or conspire with any other person, corporation, copartnership, association or trustee to monopolize or attempt to monopolize any part of the trade or commerce in this state shall forfeit for each such offense not less than one hundred dollars nor more than five thousand dollars. Any such person, cor-

The statute involved has been before this court three times: in the *Lorillard Case, supra,* and twice in *Pulp Wood Co. v. Green Bay P. & F. Co.* 157 Wis. 604, 147 N. W. 1058, and 168 Wis. 400, 170 N. W. 230.

In the first *Pulp Wood Case* decision it is pointed out that sec. 133.01 is a mere re-enactment of the first two sections of the Sherman Anti-Trust Act, with application to intrastate as distinguished from interstate transactions, and that its construction is ruled by the federal decisions construing the federal statute. The briefs cite a multitude of such decisions, some of which are cited in the first *Pulp Wood Case* decision. Only a few will be cited here. No need is perceived of again going over the ground covered in the *Pulp Wood Case* wherein the "rule of reason" as adopted by the federal courts in applying the Sherman Act is expounded. A general view of secs. 1 and 2 of the Sherman Act is most readily obtained in 15 U. S. C. A., pp. 3 to 121, where all federal cases that have arisen under the act are collected and briefly stated.

poration, copartnership, trustee or association shall also be liable to any person transacting or doing business in this state for all damages he may sustain by reason of the doing of anything forbidden by this section."

Secs. 1 and 2, title 15, ch. 1, U. S. Anno. Code:

"Sec. 1. Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several states, or with foreign nations, is declared to be illegal. Every person who shall make any such contract or engage in any such combination or conspiracy, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

"Sec. 2. Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several states, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be punished by fine not exceeding five thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court."

That the complaint states violation of sec. 133.01 seems to us to appear from consideration of the paragraph of that statute above numbered (3). This paragraph corresponds to sec. 2 of the Sherman Act, the purpose of which is to supplement sec. 1 of that act and make it impossible in any way to frustrate or evade the public policy declared by sec. 1; to embrace every attempt to accomplish what is prohibited by sec. 1; and to prevent restraints of trade by any monopolization or attempts to monopolize, although the acts by which such result is accomplished are not embraced within the general enumerations of sec. 1. *Standard Oil Co. v. U. S.* 221 U. S. 1, 61, 31 Sup. Ct. 502. Sec. 2 covers three classes of acts: monopolizing, attempting to monopolize, and combining or conspiring to monopolize. *Buckeye Powder Co. v. E. I. du Pont de Nemours P. Co.* 196 Fed. 514. Monopolizing, generally speaking, is concentrating business' in the hands of one or a few. *National Fireproofing Co. v. Mason B. Asso.* 169 Fed. 259. An attempt to monopolize is an attempt at such concentration. Giving to sec. 133.01 the same construction that has been given to secs. 1 and 2 of the Sherman Act, which we are required to do under ruling of the *Pulp Wood Case* first above cited, and bearing in mind that par. (3) of our statute as above numbered applies to an attempt to monopolize any part of the trade in the state, and that the expression "any part of the trade" has a geographical as well as a distributive application as held in the *Standard Oil Co. Case, supra,* respecting sec. 2 of the Sherman Act, it seems clear that the complaint states violation of the statute by attempting to monopolize the Milwaukee cigar trade and by combining and conspiring so to attempt. To monopolize it is not necessary that the monopolization be complete; it is sufficient if the acts charged tend towards that end and to deprive the public of the benefits of free competition. *Montague Co. v. Lowry,* 193 U. S. 38, 24 Sup. Ct. 307; *U. S. v. E. C. Knight Co.* 156 U. S. 1, 15 Sup.

Ct. 249. An attempt at monopoly may exist although limited to a narrow territory; it exists if the acts charged tend directly, necessarily, and substantially toward monopoly. *Bigelow v. Calumet & Hekla M. Co.* 167 Fed. 704; *Id.* 167 Fed. 721.

If it is a close or doubtful question whether the facts alleged in a complaint constitute a violation of the statute involved, the court will not pass upon the merits on demurrer, but will wait until the evidentiary facts are before the court which may materially aid in determining whether the law has been violated. *Pulp Wood Co. v. Green Bay P. & F. Co.* 157 Wis. 604, at p. 618 (147 N. W. 1058). This rule goes far to sustain the overruling of the demurrer by the circuit court, and with the aid of the familiar rule that pleadings will be liberally construed on demurrer according to their intendment, in our opinion justifies the ruling appealed from.

While the above seems to us sufficient to justify affirmance of the order overruling the demurrer, counsel for appellant has submitted an exhaustive brief in support of his contentions and we should perhaps briefly discuss his principal propositions.

Counsel first contends that the acts of the defendants stated in the complaint do not justify the conclusion of fact that the defendants are attempting to create a monopoly or unlawfully restraining trade. His position is that conclusions of fact based upon alleged acts are no more admitted by demurrer than are conclusions of law. The principle may be conceded without its following that the ultimate facts essential to attempts at monopoly and to unlawful restraint of trade stated in the complaint are mere conclusions of facts from the acts pleaded. The statute declares that combinations and contracts intended to restrain competition in the supply of articles to be sold in the state that are in general use therein constitute an illegal restraint of trade. Such a combination on the part of the defendants is alleged. As

matter of common knowledge, cigars are an article in general use in the state. Combination of the defendants with intent and purpose to restrain competition in supplying cigars to Milwaukee retailers, to eliminate from the Milwaukee market all cigars not exclusively handled by defendants, and to drive competitors of defendants in the Milwaukee market out of business is alleged. The statute also prohibits combinations or conspiracies to attempt to monopolize any part of the trade in the state. Such combination and conspiracy of the defendants are alleged. The Lewis and Leidersdorf Company is alleged to hold a dominant position in the wholesale cigar business in Milwaukee through its agreement with the other defendants and its use of its contract with retailers. Trade access to the drug stores and cigar stands in Milwaukee is alleged to be necessary to a successful jobber's business. Absorption of the entire trade of 170 out of 450 of such stores and stands is alleged. Destruction of the greater part of the business of other Milwaukee jobbers with said 170 dealers and common intent by defendants to drive out of business other jobbers is alleged. Combination and agreement of the defendant to monopolize or attempt to monopolize the Milwaukee wholesale cigar trade is alleged. None of these allegations is a conclusion of fact from the alleged acts of the defendants, but each is an allegation of simple fact, which by demurrer is admitted to be true. Together these allegations show, or it is at least doubtful whether they do not show, combination and conspiracy in violation of the statute.

It is also contended by appellant's counsel that the statute is intended to ban only such combinations as fix or limit price or quantity and that the provision respecting supply is material only because it affects price. This contention is based on the history of the development of the common-law doctrine condemning monopolies. A statement of this development is contained in the opinion of Mr. Chief Justice

WHITE in *Standard Oil Co. v. U. S., supra.* It is true that effect on price is the point at which the public interest is considered as affected in these common-law cases. But it is not true that effect on price is the only reason for the prohibitions of either sec. 133.01 or of the Sherman Act. As stated in *U. S. v. International Harvester Co.* 214 Fed. 987, 1001, "No one who has studied with an open mind the history of the Sherman Act and the atmosphere in which it was framed, can reasonably doubt that it was not born of a mere concern over prices in dollars and cents." Sec. 133.01 expressly covers supply as well as price, and supply is involved not only as it affects the public through price but as it affects it in cutting the public off from getting the kind or quality of article which it prefers, and as it affects competitors in shutting them off from trade outlets to which they are entitled to free access. Counsel argues that the amendment of sec. 133.01 made after the *Pulp Wood Case* was decided, which interpolates into the original statute references to supply, price, and quantity, shows that price and quantity were the only things in the legislative mind. This is hardly a fair inference. The statute when the *Pulp Wood Case* was decided comprised (1) and (3) of the present statute as deleted in the body of the opinion. The amendment referred to appears by comparing the deleted statute with the full statute set out in the margin. "Supply" was certainly in mind, as that word was used in the amendment as well as the words "price" and "quantity." The word "supply" covers not only the idea of the quantity of cigars but also that of the brands and sizes of cigars that may be sold in Milwaukee county. Combination and conspiracy to restrain competition in supplying cigars to retailers so as to eliminate from the retail market all kinds of cigars except those exclusively handled by defendants are alleged. The necessary effect of this is to deprive the public of choice in the cigars they will buy, and to cut off supply from the portion of the public who prefer

brands of cigars other than those supplied by the defendants. This idea is plainly within the language of the statute banning every combination "intended to restrain or prevent competition in the supply or price of any article or commodity in general use in this state." Control of price and quantity are especially mentioned, but control of supply in other ways than quantity is also covered. Under many decisions anything that "prejudices the public interests by unduly restricting competition or unduly obstructing the course of trade" falls within the prohibition of the statute. *Nash v. U. S.* 229 U. S. 373, 376, 33 Sup. Ct. 780.

Counsel also contends that injury to other jobbers of Milwaukee county through shutting off their competition is not within the prohibition of the statute, but only injury to the public is prohibited. As indicated above, the public does suffer injury by the cutting off of other jobbers from the trade outlets essential to successful business, although the injury be not the raising of prices. But injury to competitors as well as injury to the public is under the ban of the statute. "Agreements which, in their necessary operation upon the action of the parties to them, tend to restrain their natural rivalry and competition, and thus to result in the disadvantage of the public, *or of third parties,* are against sound principles of public policy and are void." *Atcheson v. Mallon,* 43 N. Y. 147, 149, quoted with approval in *Milwaukee M. & B. Asso. v. Niezerowski,* 95 Wis. 129, 136, 70 N. W. 166. The above is stated in reference to a contract between individuals that one party was endeavoring to enforce against the other, but it is nevertheless a true statement of the principles of the common law respecting interference with trade which it is the purpose of the Sherman Act and of sec. 133.01 to enforce. Free access to trade outlets is a right of individuals. Closing such outlets or materially narrowing them to competitors is a direct and unlawful restraint of trade. *U. S. v. Keystone W. C. Co.* 218 Fed. 502. All

contracts or acts that are "entered into or done with intent to wrong the general public and to limit the right of individuals thus restrain the free flow of commerce" and are condemned. *Standard Oil Co. Case, supra,* p. 58. If power "is improperly used to injure either a competitor or the public, or if such power evidently tends toward the injury of either, the mischief either done or threatened is condemned by the statute." *Keystone Case, supra.*

It is contended by appellant that such power as defendants exercise here is not used improperly because the contract of the Lewis and Leidersdorf Company with its retailers is lawful. Conceding that it is lawful in itself, it does not follow that it cannot be used unlawfully. If it be used with so many and with such dealers that defendants are thereby enabled to dominate the local market to such an extent as to destroy the business of their competitors and is used with intent to produce such result, as the complaint in effect alleges, it then becomes an instrument by which trade is restrained and monopoly is threatened if not created. It then falls under the rule of the *Keystone Case, supra,* and *U. S. v. Eastman Kodak Co.* 226 Fed. 62. Of course, the geographical dominance of trade was vast in those cases while here it is local, but as above indicated and as held in the *Pulp Wood Case* in 168 Wis. 400, 170 N. W. 230, an attempt to monopolize "any part" of the trade of the state is under ban of the statute and the trade of the city of Milwaukee is no inconsiderable part of the trade of the state. The intent and purpose with which acts are done often become highly important in restraint-of-trade cases, as where there is only probability of producing undue restraint of trade or monopoly. *U. S. v. Reading Co.* 226 U. S. 324, 370, 33 Sup. Ct. 90. Where monopoly is actually created, intent may be immaterial. But in attempts to monopolize, not fully accomplished, intent is essential. Unlawful intent converts what might otherwise be lawful into a conspiracy

forbidden by the statute. *Nash v. U. S., supra.* A contract lawful in itself becomes unlawful when used as part of a scheme to create virtual monopoly. 19 Ruling Case Law, p. 114. "In the absence of a purpose to monopolize or the compulsion that results from contract or agreement, the individual certainly may exercise great freedom; but concerted action through combination presents a wholly different problem and is forbidden when the necessary tendency is to destroy the kind of competition to which the public has long looked for protection." *U. S. v. American Linseed Oil Co.* 262 U. S. 371, 390, 43 Sup. Ct. 607. Acts done through combinations or conspiracy to injure one in business may be unlawful while an individual doing the same acts might be within his legal rights. "One person may, through malicious motive, attract to himself another's customers, and thus ruin the business of such other without redress; but when a number of persons, acting wholly or in part from such malicious motives, combine together, the injury to such other is actionable." *Hawarden v. Youghiogheny & L. C. Co.* 111 Wis. 545, 550, 87 N. W. 472. Intent and conspiracy sufficiently appear from the allegations of the complaint above stated, and we think bring the defendants' acts within the prohibitions of the statute.

It is contended lastly that no coercion is used by the defendants to induce retailers to enter into their contracts and that this distinguishes the case from others wherein acts have been held to constitute attempt at monopoly. It is true that in case of exclusive-sale contracts, threats not to sell to the contracting buyer unless the contract was entered into or other coercive threats have often accompanied the transactions held violative of the Sherman Act. But we do not find any cases holding that coercion is essential to such violations. We are of opinion that if monopoly be created or attempts thereat be made through combinations and conspiracy with

intent and purpose to produce such result, the statute is violated although coercion be absent. It is also urged that the cases wherein monopoly has been found show a definite percentage of from thirty-eight to ninety-five per cent. of trade absorbed. We do not find, however, that a less percentage has ever been found insufficient, nor do we find that absence of averment of a definite percentage has ever been held fatal to a complaint for injunctive or other relief under the federal or our statute. As said in the *Knight Case, supra,* "all the authorities agree that in order to vitiate a contract or combination it is not essential that its result should be a complete monopoly; it is sufficient if it really tends to that end and to deprive the public of the advantages which flow from free competition." *Northern Securities Co. v. U. S.* 193 U. S. 197, 332, 24 Sup. Ct. 436, is to the same effect. Other federal cases reiterate these holdings. Upon this point the case of *Montague Co. v. Lowry, supra,* bears directly. The Sherman Act was the basis of the action. It was claimed that the sale of the commodity involved was so small as to be negligible in interstate commerce. Sales of unset tiles in the city of San Francisco only were involved, which did not amount to one per cent. of the business of tile dealers in that city. It was held the combination involved, if carried out, would directly effect a restraint of interstate commerce. The court said: "The amount of trade in the commodity is not very material." Perhaps this is an extreme statement, but it at least indicates that the complaint in this case should not be held insufficient on the ground that the percentage of trade controlled by the defendants is not definitely stated or is too small to be within the purview of the statute.

Counsel for appellant in his brief criticises the carefully prepared opinion of the learned circuit judge for taking short extracts from opinions to support the conclusions

reached. This opinion may appear to be justly open to like criticism. But as stated by Mr. Justice BARNES in the first *Pulp Wood Case, supra,* pp. 618, 619 (147 N. W. 1058): "There has been a world of decisions on our antitrust laws, common and statute, in the state and federal courts. To attempt to review them all would be a work of supererogation. To harmonize them would be an impossibility." Appellant's counsel gives nearly one hundred citations to support his views, the respondent's counsel something over seventy to support theirs. In such situation extensive quotations from or exhaustive review of authorities would lead to an opinion unduly long and serve no useful purpose. We content ourselves with expressing views which we believe to be supported by reason and the comparatively few adjudicated cases cited.

*By the Court.*—The order is affirmed.