REESE, Appellant, v. ASSOCIATED HOSPITAL SERVICE, INC., and others, Respondents.*

*No. 60. Argued January 6, 1970.—Decided February 3, 1970.*
(Also reported in 173 N. W. 2d 661.)

* Motion for rehearing denied, without costs, on March 31, 1970.

For the appellant there were briefs by *Bruce Gillman* and *Arthur, Tomlinson & Gillman,* all of Madison, and oral argument by *Bruce Gillman.*

For the respondents other than Columbia Hospital, Evangelical Deaconess Hospital, and St. Mary's Hospital there was a brief by *Steven E. Keane, James P. Brody,* and *Foley, Sammond & Lardner,* all of Milwaukee, and by *Jerome J. Foley, Garth Seehawer,* and *Foley, Capwell, Foley & Seehawer,* all of Racine, and oral argument by *Mr. Keane.*

For the respondent St. Mary's Hospital there was a brief by *Gibbs, Roper & Fifield* of Milwaukee, and oral argument by *Richard S. Gibbs.*

A brief *amicus curiae* was filed by *Robert W. Warren,* attorney general, and *George F. Sieker* and *Bruce A. Craig,* assistant attorneys general.

ROBERT W. HANSEN, J. The plaintiff insurance agent contends that the three percent discount secured by Blue Cross under its contracts with the hospitals is, as to uninsured patients or those who have coverage under contracts with commercial insurance companies, an unreasonable restraint of trade, statutorily prohibited in Wisconsin.

Three statutes are here involved:

(1) The hospital service corporations statute, under which Blue Cross is organized and operates; [1]

(2) The trusts and monopolies statute, declaring illegal contracts or combinations in the nature of a trust or conspiracy in restraint of trade; [2]

(3) The insurance business methods chapter, prohibiting unfair methods of competition in the business of insurance. [3]

*Hospital service corporations.*

Blue Cross is a nonprofit, nonproprietary corporation, organized for the sole purpose of providing hospital services to its subscribers. The purpose and need for such hospital service corporations have been set forth by the legislature in the statute authorizing their creation and operation. [4] The history and nature of such corporations has been recently discussed by this court. [5]

---

[1] Sec. 182.032, Stats.

[2] Sec. 133.01, Stats.

[3] Ch. 207, Stats.

[4] Sec. 182.032 (1), Stats.: "As a guide to the interpretation and application of this section, the public policy of this state is declared to be: To ease the burden of payment for hospital services, particularly in the low income groups, where with the advance of scientific methods the payment for adequate hospital services is a pressing problem with grave social ramifications, nonprofit hospital service corporations, based on the tested experience in many parts of the United States, economically sound and socially beneficent, are needed. While in no way changing the present status of voluntary hospitals in the state, these corporations will enable a larger number to procure for themselves adequate hospital services and leave the use of the free and part-free services given by the hospitals to those whose economic status makes self-procurement of such services impossible. Without imposing the burden on the public treasury and free from any motive of profit, these corporations will contribute to the solution of a pressing social and economic problem in the state and merit the support of the citizens."

[5] *Associated Hospital Service v. Milwaukee* (1961), 13 Wis. 2d 447, 109 N. W. 2d 271.

It is required that such hospital service corporations be formed without capital stock, operated not for profit and exclusively for the purpose of providing hospital services, and that no dividend, benefit or pecuniary profit be paid to any of the members or directors.[6]

Two types of contract are necessarily involved in the operation of a hospital service corporation in this state under sec. 182.032, Stats. One is with its subscribers. Here Blue Cross enters into contracts with its subscribers, either on an individual or group basis, whereby such subscribers pay fixed fees in installments assuring them that all or the major part of their expenses for hospital services will be paid by Blue Cross. Blue Cross agrees to pay such charges. The second type of contract involved is between Blue Cross and contracting hospitals. Blue Cross agrees to pay certain charges and the hospital agrees to provide hospital services to Blue Cross subscribers, subject to the provisions and limitations of the contract between Blue Cross and the subscribers. Sec. 182.032 clearly authorizes Blue Cross to contract with hospitals for the providing of hospital services to Blue Cross subscribers.[7] In fact, it requires them to do so before entering into any contracts with subscribers.[8]

It follows that Blue Cross, in contracting with the codefendant hospitals for services to its subscribers, including the provision that makes possible the three

---

[6] Sec. 182.032 (2), Stats.

[7] Sec. 182.032 (2) (a), Stats.: "Nonprofit corporations . . . may be organized under this section for the purpose of establishing, maintaining and operating service plans, whereby hospital services may be provided to persons or groups of persons, subscribers to such plans and their respective dependents, by hospitals *with which such corporations may make a contract* thereof." (Emphasis supplied.)

[8] Sec. 182.032 (4), Stats.: "Such corporation *shall not* enter into contracts with subscribers *until it shall have contracts with not less than 6 participating hospitals* having a total of not less than 600 beds." (Emphasis supplied.)

percent discount to Blue Cross on bills submitted by the hospitals, was acting within and pursuant to the provisions of sec. 182.032, Stats.

*Antitrust law.*

Plaintiff insurance agent would limit Blue Cross contracts with hospitals to agreeing to pay fees for hospital services not less in amount than those charged noninsured patients or those who have hospitalization insurance policies with commercial companies. Such contention views any benefit, secured for Blue Cross subscribers only, as violative of the Trusts and Monopolies Act and as a contract in restraint of trade.[9]

The contention that any discount secured by Blue Cross through its contracts with hospitals restrains trade is that: (1) Uninsured patients and those who have their health insurance with commercial companies must pay hospital rates adjusted or inflated to make up for the three percent discount granted Blue Cross; (2) alternatively, to the extent the Blue Cross discount is not charged off to other users of hospital services, the deficit must be made up from public or charitable contributions; and (3) because of the three percent discount it enjoys, Blue Cross is able to reduce premiums to its subscribers, thus diverting premium payers from commercial companies to Blue Cross.

While holding that the mere granting of a discount to Blue Cross by participating hospitals did not constitute any restraint on trade, the trial court added that, assuming it would be a restraint of trade, sec. 182.032 (1), Stats., "supersedes" any contrary policy expressed in sec. 133.01. This is using a meat cleaver to carve out a broad area of near-complete exemption from antitrust provisions where a scalpel can more effectively be used

---

[9] Sec. 133.01 **Unlawful Contracts; conspiracies.** (1) "Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. . . ."

to permit a hospital service corporation to do exactly what the legislature has authorized, in fact required, it to do.

Sec. 133.01, Stats., has been held by this court to be a reenactment of the first two sections of the federal Sherman Antitrust Act, with application to intrastate as distinguished from interstate transactions, with its construction to be ruled by federal decisions construing the federal statute.[10] The "rule of reason" test as adopted by the federal courts in applying the Sherman Act has been accepted by this court as applicable to sec. 133.01.[11] It follows that a contract must constitute an unreasonable restraint of trade to be violative of sec. 133.01. It is enough here to hold that a contract between Blue Cross and certain hospitals whereby Blue Cross receives a three percent discount is not an unreasonable restraint of trade, if it is a restraint on trade at all. It cannot be held to be unreasonable for a hospital service corporation to enter contracts which are specifically authorized by sec. 182.032 and which clearly fulfill the stated purpose of such statute. So long as Blue Cross stays within sec. 182.032, legislatively authorized acts and activities must be held to meet the "rule of reason" test and not to be illegal.

If it is complained that this places hospital service corporations in a special category, the answer is that the legislature has seen fit so to do, and has spelled out its reasons for so doing. The legislative grant of tax-exempt status to nonprofit hospital service corporations puts them in a position of competitive advantage as compared to commercial corporations providing hospitalization insurance policies. Should it be claimed and established that such tax-exempt status was a restraint on trade,

---

[10] *State v. Lewis and Leidersdorf Co.* (1930), 201 Wis. 543, 549, 230 N. W. 692; *Pulp Wood Co. v. Green Bay Paper & Fiber Co.* (1914), 157 Wis. 604, 147 N. W. 1058.

[11] *Ibid.*

the conferring of such competitive advantage by the legislature makes it a not unreasonable restraint.

The trial court drew an analogy between the legal status of Blue Cross and that of cooperatives. As to exemption from certain taxes and in other regards, the analogy is apt enough. Such cooperatives have not been held to be *in toto* exempt from the provisions of sec. 133.01, Stats.; however, as to acts or activities clearly within their statutory authority, even a resultant restraint on trade is not to be held to be illegal.[12] Even in a situation where the legislature had expressly exempted a certain organization from the reach of sec. 133.01, such exemption was held to relate only to acts of such organization in furtherance of its legislatively stated purpose.[13] Having held that the contract provision providing for a discount between Blue Cross and the participating hospitals comes within the stated purpose and express provisions of sec. 182.032, it follows that it is not to be held an unreasonable restraint of trade under sec. 133.01.

*Insurance regulations.*

Since this cause of action is based solely on a claim of violation of sec. 133.01, Stats., any reference to the regulatory authority of the insurance department over Blue Cross may be no more than a footnote. However, it should be made clear that the legislature has provided that, even when operating under sec. 182.032, hospital service corporations are subject to certain controls by the state insurance department. This it has done by special and specific legislative enactment.[14] Thus Blue

[12] *Northern Wisconsin Co-operative Tobacco Pool v. Bekkedal* (1924), 182 Wis. 571, 197 N. W. 936.

[13] *State v. Retail Gasoline Dealers Asso.* (1950), 256 Wis. 537, 542, 41 N. W. 2d 637.

[14] Sec. 200.26 (7), Stats.: "Such organizations [Note: hospital service corporations] and their agents, plans and contracts shall be subject to the provisions of s. 200.13 relating to fees, s. 201.045

Cross is required to obtain a certificate of authority, renewable annually, and issuable only after the insurance commissioner has satisfied himself that ". . . such insurer has met all requirements of law and that its methods and practices and the character and value of its assets will be such as to adequately safeguard the interests of its policyholders and the people of this state. . . ." [15] The commissioner has the right to revoke or suspend such certificate or license if the required standards of operation are not maintained by Blue Cross.[16]

Additionally, when the legislature placed nonprofit insurance corporations under insurance department controls, it brought them under ch. 207, Stats., relating to "unfair methods of competition and unfair or deceptive acts or practices." A number of specific practices are statutorily defined to be "unfair methods of competition." [17] Also, when the insurance commissioner has reason to believe that an insurance company or hospital service corporation is engaged in any practice, not specifically named, but which is unfair to competition or deceptive in character, he may enforce the penalty provisions of ch. 207.[18] The power to investigate is granted the commissioner,[19] and the procedure for enforcement

relating to licensing, s. 201.25 relating to investments, *ch. 207 relating to unfair methods of competition and unfair or deceptive acts or practices,* and s. 200.03 (18) relating to powers of the commissioner of insurance, to the same extent and in the same manner as if such organizations were domestic insurance corporations and to s. 209.04 (11) relating to agents. Such organizations shall also be subject to s. 201.18 (1) relating to premium reserves . . . ." (Emphasis supplied.)

[15] Sec. 201.045 (1), Stats.
[16] Sec. 201.045 (2), Stats.
[17] Sec. 207.04, Stats.
[18] Sec. 207.09 (1), Stats.
[19] Sec. 207.05, Stats.

is spelled out.[20] For violation of the specific "unfair to competition" practices prohibited by the statute, the commissioner has the power to issue cease and desist orders,[21] with a right to subsequent judicial review.[22] As to asserted violations of the general provisions as to unspecified practices, the commissioner is to petition the courts for the restraining of such practice.[23] The test in proceedings under ch. 207 is not whether a particular practice constitutes an unreasonable restraint upon trade. It is whether or not such practice is "an unfair method of competition or an unfair or deceptive act."[24]

The legislature has given the insurance commissioner authority to review and control trade practices in the hospital insurance and hospital service corporation field. If he were to be derelict in his duty in this regard, the remedy would be by appropriate writ to require him to act. Where an act or practice is within the purposes and provisions of sec. 182.032, review or challenge of it come not in a sec. 133.01 lawsuit, but in a ch. 207 proceeding.

The judgment of the trial court sustaining the demurrer of the defendants and denying leave to plead over must be affirmed.

*By the Court.*—Judgment affirmed.

---

[20] Sec. 207.06 and sec. 207.09, Stats.

[21] Sec. 207.07, Stats.

[22] Sec. 207.08, Stats.

[23] Sec. 207.09 (2), Stats.

[24] Sec. 207.03, Stats.