THE HONORABLE, THE SENATE
You have asked my opinion on the constitutionality of 1971 Senate Bill 481, which prohibits the State Bar of Wisconsin from promulgating a minimum fee schedule for attorneys. The bill proposes to create sec. 133.01 (4), Stats., and, in effect, declares the promulgation of this fee schedule a restraint of trade. Under sec. 133.01 (3), Stats., criminal penalties attach for violation of the prohibited practices.
Specifically you ask whether the bill would be constitutional in respect to:
(1) State and federal due process, assuming the fee schedule to be recommended rather than mandatory. *Page 97 
(2) Freedom of speech under the First and Fourteenth Amendments of the U.S. Constitution.
(3) The usurpation of the inherent judicial power to regulate the practice of law.
STATE AND FEDERAL DUE PROCESS
Apparently the question in this respect relates to the necessity for clear and explicit legislation, particularly in cases involving penal statutes.
In State v. Woodington (1966), 31 Wis.2d 151, 181,142 N.W.2d 810. The court stated:
"* * * Is the statute read as a whole so indefinite and vague that an ordinary person could not be cognizant of and alerted to the type of conduct, either active or passive, that is prohibited by the statute?"
It would appear from the provisions of the bill that no undue ambiguity exists. Only the term "minimum fee schedule" provides any basis for discussion. It would be possible to contend that the absence of any clarification as to whether the fee schedule is mandatory or merely recommended creates a fatal ambiguity. It would have to be assumed, however, that the legislature was aware of the fact that the materials currently published by the State Bar designate the fee schedule as a "Customary Minimum Fee Guide" and a "Minimum Fee Schedule," and the further fact that there never has been a mandatory schedule in Wisconsin.
Consequently, it would be difficult to contend that any problems of interpretation would be encountered, particularly by the State Bar of Wisconsin, the only subject of proposed sec.133.01 (4), Stats.
FREEDOM OF SPEECH
Free speech, as any other constitutional right, is clearly not absolute. Vogt Inc. v. Int'l Brotherhood of Teamsters (1957),354 U.S. 284, 77 S.Ct. 1166, 1 L.ed. 2d 347. The attempted purpose of SB 481 is to prohibit the promulgation of a fee schedule on the basis that it results in a restraint of trade as prohibited by sec. 133.01 (1), Stats. That an association can, by the use of nonmandatory suggested fee schedules, violate the antitrust laws has *Page 98 
been affirmed by the Supreme Court in U.S. v. NationalAssociation of Real Estate Boards (1950), 339 U.S. 485,70 S.Ct. 711, 94 L.ed. 1007.
Without consideration of the issues next discussed in this opinion, i.e., the balance of legislative and judicial powers, it would not be difficult to conclude that the regulation of antitrust activities in the manner attempted would be proper. Recommended price lists and rates have been uniformly stricken down as price fixing and violative of the provisions of secs. 1 and 2 of the Sherman Act. Section 133.01, Stats., has been held to be a re-enactment of those provisions. cf. Reese v. AssociatedHospital Service (1970), 45 Wis.2d 526, 532, 173 N.W.2d 661.
LEGISLATIVE AND JUDICIAL POWERS
Under SB 481, the legislature would be declaring the minimum fee schedule of the State Bar a restraint of trade as prohibited by sec. 133.01, Stats.
Suggested or non-mandatory fee schedules have been held to be in violation of the antitrust laws, U.S. v. National Associationof Real Estate Boards (1950), 339 U.S. 485, 70 S.Ct. 711,94 L.ed. 1007. In that case the court found a non-mandatory schedule of rates published by the Washington (D.C.) Real Estate Board to be price fixing and, therefore, per se "an unreasonable restraint of trade." The dissenting opinion in the Real Estate Board case indicated that there would be no substantial difference between the rate schedules of real estate brokers and those of a "lawyer, doctor, a carpenter, or a plumber." 339 U.S. at p. 496.
Notwithstanding the possible restraints of trade involved, a state can, by law, authorize a practice or procedure which otherwise might be held to violate our antitrust laws. In Reesev. Associated Hospital Service (1970), 45 Wis.2d 526, 532, the Wisconsin Supreme Court held that "the rule of reason" is to be applied to restraints of trade and only those restraints held to be "unreasonable" are covered by the antitrust statute, sec.133.01, Stats. *Page 99 
The Reese case further stated that, if the legislature specifically authorized a practice, whether in restraint of trade or not, it would be held by the court to be "reasonable" and, therefore, not in violation of our state antitrust laws.
Wisconsin case law makes it quite clear that, pursuant to Art.VII, secs. 2 and 3 of the Wisconsin Constitution, the Supreme Court has the right to regulate the practice of law. In re Cannon
(1932), 206 Wis. 374, 240 N.W. 441; Integration of Bar Case
(1943), 244 Wis. 8, 11 N.W.2d 607; Lathrop v. Donahue (1960),10 Wis.2d 230, 102 N.W.2d 404, affirmed 367 U.S. 820. Thus, under reasonable circumstances, it would be permissible for the Supreme Court to authorize a minimum fee schedule for attorneys and, under the Reese doctrine, exempt it from the antitrust laws.
Since the minimum fee schedule was promulgated and adopted by the Board of Governors of the State Bar, there exists some question whether it was, in fact, "authorized" by the Supreme Court within the terms of the Reese doctrine and whether this "authorization" function can be delegated to the State Bar.
For the purposes of this opinion, however, it will be assumed that the Supreme Court has authorized the minimum fee schedule and exercised its right to regulate the practice of law. Clearly the court has frequently referred to the fee schedule with favor. cf. Touchett v. E.Z. Paint Corp. (1961), 14 Wis.2d 479, 486,111 N.W.2d 419; Conway v. Sauk County (1963), 19 Wis.2d 559, 604,120 N.W.2d 671, and State ex. rel. Baker v. County Court (1965),29 Wis.2d 1, 17, 138 N.W.2d 162. An appendix to the Lathrop case also favorably discusses the minimum fee schedule. However, it is not clear whether that appendix is part of the court's decision.
Your third question asks whether the legislature's attempt to prohibit the minimum fee schedule represents, in regard to the constitutionality of the attempt, "an effort by the legislature to usurp inherent judicial powers to regulate the practice of law."
The usual criteria by which the constitutionality of a statute is evaluated are not available in this unique situation involving the Supreme Court's right to regulate the practice of law. The difficulty arises because the Supreme Court has held that not all *Page 100 
legislative incursions into the practice of law are improper. In the Integration of Bar Case (1943), 244 Wis. 8, the court stated at p. 50:
"It is quite obvious from a study of the history of the bar and the consideration of judicial decisions that the line of demarcation between the legislative field and the judicial field in matters relating to the bar is not a straight line or even a fixed one. * * *"
In State ex rel. Reynolds v. Dinger (1961), 14 Wis.2d 193, the court was faced by an administrative rule, REB 5.04, which purported to authorize, to a limited degree, real estate brokers to give legal advise or services. At p. 206 the Dinger case found that the Rule did involve the practice of law, and that although the court could declare the Rule void it would not do so because of its salutatory effect and the fact that it did not exceed previously tolerated activities. In other words, the court exercised a discretionary right in respect to matters involving legislative incursion into the judicial province. This, of course, would not be true in cases involving traditional constitutional issues. Furthermore, at times, the Supreme Court has recognized the legislature's right to declare, in the form of legislation, the legislative position in respect to the general welfare. In the Integration of Bar Case, supra, at p. 51, the court, in passing on a legislative attempt to integrate the Bar, stated:
"* * * In the promotion of the general welfare the legislature may prescribe required qualifications, but its acts are always subject to review by the court for the purpose of ascertaining whether they embarrass the administration of justice or invade the proper exercise of the judicial function."
In respect to the legislature's attempt to integrate the Bar, the court indicated, at p. 52, it welcomed this statement on the general welfare:
"While the legislature has no constitutional power to compel the court to act or, if it acts, to act in a particular way in the discharge of the judicial function, it may nevertheless withpropriety, and in the exercise of its power and the discharge ofits duty, declare itself upon questions relating to the general welfare which includes the integration of the bar. The court, as *Page 101 
has been exemplified during the entire history of the state, willrespect such declarations and, as already indicated, adopt themso far as they do not embarrass the court or impair itsconstitutional functions." (Emphasis supplied)
The implication of these statements is that legislative declarations are viewed as an aspect of comity between two governmental branches and will further be respected and accepted except in cases of direct conflict. It would thus appear that the legislative pronouncement, in the form of Senate Bill 481, would not, as such, be a usurpation of the judicial function. Rather, it would be a legislative statement on the general welfare to be evaluated by the Supreme Court in terms of the judicial powers and the necessary balance between the need to legislate on the general welfare and the court's responsibility to regulate the practice of law.
A number of cases such as Touchett, Conway, Baker and Lathrop,supra, indicate that the Supreme Court does view the subject of attorney's fees as clearly within its province in regulating the practice of law. Consequently, it would be my opinion that, although Senate Bill 481 is not unconstitutional on its face and would be recognized and considered by the Supreme Court as a proper legislative declaration on the public welfare, the Supreme Court could very likely, in exercising its discretion, declare that matters concerning a minimum fee schedule rest solely within the judicial power to regulate the practice of law.
RWW:BAC