**TECHNICON MEDICAL INFORMATION SYSTEMS CORP., Plaintiff,**

v.

**GREEN BAY PACKAGING, INC., St. Vincent Hospital, and Leo N. Crowley, Defendants.**

No. 78–C–363.

United States District Court, E. D. Wisconsin.

Nov. 5, 1979.

Richard C. Ninneman, Whyte & Hirschboeck, Milwaukee, Wis., Henry C. Bunsow, Townsend & Townsend, San Francisco, Cal., for plaintiff.

James B. Blanchard, Hume, Clement, Brinks, Willian & Olds, Chicago, Ill., Gregory G. Wille, Gibbs, Roper, Loots & Williams, Milwaukee, Wis., for defendants.

## MEMORANDUM AND ORDER

WARREN, District Judge.

The plaintiff, Technicon Medical Information Systems Corp. (TMIS) has filed a motion for judgment on the pleadings or in the alternative a motion for partial summary judgment on the counterclaim of the defendant Green Bay Packaging, Inc. (GBP). TMIS brought its original complaint alleging that the defendants illegally used many of the plaintiff's trade secrets in developing its computer system. The defendants counterclaimed alleging violations of federal antitrust laws and the antitrust laws of Wisconsin.

In its counterclaim, GBP alleges violation of Section 1 of the Sherman Antitrust Act of 1890, 15 U.S.C. § 1 and Section 4 of the Clayton Act, 15 U.S.C. § 15. GBP alleges that:

> TMIS has combined and conspired with others including Technicon Corporation of Tarryton, New York, to unreasonably restrain trade and suppress competition and market entry in interstate commerce in the field of computerized business office services for hospitals by a pattern of conduct and concerted efforts to force and induce service bureaus and customers to refrain from the independent use of techniques, methods, and other matters which are in the public domain, all for the purpose of forestalling competition and potential competition with TMIS. (Answer and Counter Complaint ¶ 92).

GBP also alleges that it and other defendants entered into contracts with TMIS that unreasonably restricted the use of materials which were within the public domain. Furthermore, GBP contends that other service bureaus and customers are also subjected to similar unreasonable restraints. Most importantly for the purpose of this motion, defendants allege that:

> In a concerted effort to enforce and further the foregoing restraints of trade TMIS has and sought to intimidate Green Bay into refraining from the use of computer programs which Green Bay has developed for the member hospitals of the Third Order of St. Francis independently of plaintiff's computer programs and from competing with TMIS and has demanded that Green Bay either accept a license from TMIS on prohibitive terms under alleged trade secrets which TMIS refused to identify or be sued. *In furtherance of said restraints of trade, TMIS*

*has brought its complaint in the present civil action against Green Bay and the other party defendants.* (Answer and Counterclaim ¶ 96) [emphasis added].

Defendants allege they have been harmed in their business and incurred unnecessary attorney's fees and legal expenses as a result of the plaintiff's action. Defendants reallege these contentions and allege that they also violate the Wisconsin Antitrust laws which follow the federal laws. *See, Reese v. Associated Hospital Service, Inc.,* 45 Wis.2d 526, 173 N.W.2d 661 (1970); *State v. Lewis and Leidersdorf Co.,* 201 Wis. 543, 549, 230 N.W. 692 (1930).

■ The issue presented by the plaintiff's motion for judgment on the pleading is whether one lawsuit brought to enforce alleged trade secret violations can be the basis of a cause of action under the antitrust laws of the United States and Wisconsin in light of the Supreme Court's decisions in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), and *California Motor Transport v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

This trilogy of cases represents an exception to the antitrust laws of the United States. In *Noerr, supra,* the Court held that a group of railroad companies who had joined together to influence the Pennsylvania legislature and governor to pass a bill designed to curtail trucking competition in long distant freight operation were immune from suit under the Sherman Act. 365 U.S. 135–36, 81 S.Ct. 523. The Court based its decision on the defendant's First Amendment right of association and the right to freely petition the government. *Id.* at 137–38, 81 S.Ct. 523. The Court held that Congress did not intend in passing the Sherman Act to curtail the right of the people to join together and petition the government even if such activity resulted in anticompetitive activity. *Id.*

In *Pennington, supra,* the Court applied the *Noerr* doctrine to attempts to influence

the Secretary of Labor to require companies doing business with the TVA to pay their employees the minimum wage. Such a ruling was designed to drive out many smaller companies doing business with the TVA. The Court held that "*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose. . . . Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act." 381 U.S. 670, 85 S.Ct. 1593.

In *Trucking Unlimited,* the Court extended the *Noerr* exception to activities designed to obtain relief from administrative agencies and the courts. In *Trucking Unlimited,* the defendants were alleged to have conspired to prevent the plaintiff and other carriers from obtaining certain permits required by the State of California. The alleged conspiracy was an agreement by the defendants to oppose all requests by the plaintiff for permits. This opposition included appealing any rulings by the public utilities agency to the courts. 404 U.S. at 512, 92 S.Ct. 609.

The Court held the *Noerr-Pennington* immunity with regard to petitioning the legislative and executive branch of the government also extended to petitioning the judicial branch. The Court stated:

The same philosophy governs the approach of citizens or groups of them to administrative agencies (which are both creatures of the legislature, and arms of the executive) and to courts, the third branch of Government. Certainly the right to petition extends to all departments of the Government. The right of access to the courts is indeed but one aspect of the right of petition. See *Johnson v. Avery,* 393 U.S. 483, 485, 89 S.Ct. 747, 748, 21 L.Ed.2d 718; *Ex parte Hull,* 312 U.S. 546, 549, 61 S.Ct. 640, 641, 85 L.Ed. 1034.

We conclude that it would be destructive of rights of association and of petition to hold that groups with common

interests may not, without violating the antitrust laws, use the channels and procedures of state and federal agencies and courts to advocate their causes and points of view respecting resolution of their business and economic interests *vis-a-vis* their competitors. 404 U.S. at 510–11, 92 S.Ct. at 612.

The immunity extended to petitioning of the legislature, executive or judicial branches of government is not unlimited. The *Noerr* Court recognized that:

> [T]here may be situations in which a publicity campaign, ostensibly directed toward influencing government action, *is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified,* 365 U.S. at 144, 81 S.Ct. at 533. [emphasis added].

The sham exception as it has been called was further developed in *Trucking Unlimited, supra.* There the plaintiff had alleged that the defendant's opposition to its application was preventing the plaintiff from obtaining access to the courts. The court held that such a complaint stated a cause of action under the sham exception of the *Noerr-Pennington* doctrine. The Court distinguished attempts to influence public officials from attempts to prevent others from gaining access to the Courts. The Court also recognized that certain questionable activities engaged in by those attempting to influence the legislative branch were tolerable, but that similar activities would not be permitted in the adjudicatory process. 404 U.S. 512, 92 S.Ct. 609. In *Trucking Unlimited* the Court stated:

> There are many other forms of illegal and reprehensible practice which may corrupt the administrative or judicial processes and which may result in antitrust violations. Misrepresentations, condoned in the political arena, are not immunized when used in the adjudicatory process. Opponents before agencies or courts often think poorly of the other's tactics, motions, or defenses and may readily call them baseless. *One claim,*

*which a court or agency may think baseless, may go unnoticed; but a pattern of baseless, repetitive claims may emerge which leads the factfinder to conclude that the administrative and judicial processes have been abused.* That may be a difficult line to discern and draw. But once it is drawn, the case is established that abuse of those processes produced an illegal result, *viz.,* effectively barring respondents from access to the agencies and courts. Insofar as the administrative or judicial processes are involved, actions of that kind cannot acquire immunity by seeking refuge under the umbrella of "political expression." [emphasis added].

From the foregoing it is clear that the sham exception of *Noerr-Pennington* is applicable to the adjudicatory process when there is a showing that the use of the process is not a genuine attempt to use the process correctly. It is also clear that certain conduct that would be allowed and protected in the political arena will not be permitted or protected in the adjudicatory process. It is unclear, however, whether the bringing of one lawsuit in bad faith or without probable cause is sufficient to bring the action within the sham exception of the *Noerr, Pennington,* and *Trucking Unlimited* cases.

The Supreme Court has not expressly decided this question, but recently the Court had an opportunity to discuss the matter. In *Vendo Company v. Lektro Vend Corporation,* 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), the Court discussed the question in regard to an injunction issued by the district enjoining certain state court actions. Although *Vendo* was decided on the basis of the Anti Injunction Act, the members of the Court did discuss the issue whether one baseless suit was sufficient to constitute a sham under *Trucking Unlimited.* In analyzing this decision, the Court in *Cyborg Systems, Inc. v. Management Science America, Inc.,* 1978–1 Trade Cas. ¶ 61,927 (N.D.Ill. Jan. 30, 1978), concluded that a majority of the Court would hold that one baseless or vexatious suit would be sufficient to state a cause of action under the Sherman Act. Having carefully analyzed

the *Vendo* decision, this Court finds it must concur with the conclusion expressed in *Cyborg*.

In *Vendo* Justice Blackmun and Chief Justice Burger in their concurring opinion stated that one baseless lawsuit was insufficient to state a cause of action under the sham exception. 433 U.S. at 645, 97 S.Ct. 2881. The Justices believed that *Trucking Unlimited* required a "pattern of baseless repetitive claims." *Id.*

Justices Stevens, Brennan, Marshall, and White, who dissented in the decision of the Court, rejected the necessity of a pattern of baseless repetitive suits to state a cause of action under the sham exception. The dissenters indicated that one baseless suit could constitute a violation under the Sherman Act. 433 U.S. at 662, 97 S.Ct. at 2903.

The plurality opinion written by Justice Rehnquist is somewhat unclear regarding the issue. In footnote six of the opinion, Justice Rehnquist recanted the language of *Trucking Unlimited* but went on to indicate that a federal plaintiff could bring an action to enjoin future litigation and could sue for "treble damages resulting from the vexatious prosecution of *that* state court litigation." [emphasis added]. 433 U.S. at 636 n. 6, 97 S.Ct. at 2889. This language would seem to indicate that the plurality would also hold that one baseless suit could be sufficient to state a cause of action under the Sherman Act.

The other courts that have discussed this issue are divided on the question. In a very recent decision, the district court in Colorado held that a single baseless suit could state a cause of action under the Sherman Act. In *Colorado Petroleum Marketers Association v. Southland Corp.*, 476 F.Supp. 373 (D.Colo.1979). The court held "[W]e are not convinced that the [Supreme Court meant] to give every dog one free bite [by] making it an irrebuttable presumption that the first lawsuit [is] not a sham [despite] evidence [to the contrary.]"

The courts that have held that a single lawsuit is not sufficient to come within the sham exception have relied on the language of Justice Douglas in *Trucking Unlimited*

quoted earlier in this opinion. *See, MCI Communications Corporation v. American Telephone & Telegraph Company*, 462 F.Supp. 1072 (N.D.Ill.1978); *Mountain Grove Cemetery Ass'n v. Norwalk Vault Co.*, 428 F.Supp. 951 (D.Conn.1977). The Court notes that the *MCI Communication Corp.* decision is in conflict with that same court's reasoning in *Cyborg*, but the Court believes the reasoning in *Cyborg* is more persuasive.

On the basis of the foregoing analysis, the Court finds that the defendants have stated a cause of action under the Sherman Act and within the sham exception. Therefore, the plaintiff's motion for judgment on the pleading must be and is hereby denied. The Court notes that defendants in their brief had asserted other legal theories for its counterclaim, but because of the Court's above decision, the Court declines to decide the merits of those arguments.

■ Furthermore, the Court finds the contradictory affidavits of the parties regarding the issue of whether the plaintiff brought this suit in good faith, presents a question of fact and, therefore, summary judgment is inappropriate at this time.

SO ORDERED this 5th day of November, 1979, at Milwaukee, Wisconsin.