Richard GRAMS, Ronald Grams, Gerald Grams, Darrell
Grams and Grams Insurance Services, Inc., a domes-
tic corporation, Plaintiffs-Appellants,

v.

Kenneth J. Boss, Jack A. Ketterhagen, Francis E. Beggs,
Ketterhagen, Beggs & Boss, Inc., a domestic corpo-
ration, LaCrosse Garot-Christman Agency, Inc., a
domestic corporation, and Associated Hospital Ser-
vices, Inc., a domestic insurance corporation, De-
fendants-Respondents-Petitioners.

Supreme Court

*No. 78–567. Argued June 4, 1980.—Decided June 27, 1980.*

(Also reported in 294 N.W.2d 473.)

For the Associated Hospital Service, Inc., there were briefs by *Steven E. Keane, Ronald M. Wawrzyn* and *Foley & Lardner* of Milwaukee, and *Foley & Seehawer, S.C.,* of counsel, of Racine, and oral argument by *Mr. Keane* of Milwaukee.

For Kenneth J. Boss, Jack A. Ketterhagen, Francis E. Beggs and Ketterhagen, Beggs & Boss, Inc., there was a brief by *Roger L. Gierhart* and *Bell, Metzner & Siebold, S.C.,* of Madison, and oral argument by *Mr. Gierhart.*

For the plaintiffs-appellants there was a brief by *James C. Herrick* and *Brynelson, Herrick, Gehl & Bucaida* of Madison, and oral argument by *James C. Herrick*.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals, *Grams v. Boss* (filed June 27, 1979), which reversed orders of the circuit court for Dane county, P. Charles Jones, Circuit Judge. The circuit court had granted defendants' motions for summary judgment on plaintiffs' second cause of action, entitled conspiracy in restraint of trade.[1] We agree with the court of appeals that the circuit court erred in granting summary judgment.

## I.

The individual plaintiffs (Grams) are insurance agents for and officers of the corporate plaintiff, Grams Insurance Service, Inc., an insurance agency based in Madison, Wisconsin. The individual defendants (Boss, Ketterhagen and Beggs) are insurance agents for and officers of one of the corporate defendants, Ketterhagen, Beggs & Boss, Inc. (K, B & B), an insurance agency based in Madison, Wisconsin. The defendant LaCrosse Garot-Christman Agency, Inc. (L G-C), is an insurance agency located in LaCrosse, Wisconsin. All three agencies market hospital, health and life insurance. The defendant Associated Hospital Services, Inc. (AHS), also known as Blue Cross of Wisconsin, is a hospital service corporation organized under sec. 182.032, Stats. 1973.[2] The plaintiffs were at one time employed by K,

---

[1] The first and third claims, breach of contract and slander, are not involved in this appeal.

[2] Sec. 182.032(1), Stats. 1973, provides:

"182.032 **Hospital service corporations, public policy.** (1) As a guide to the interpretation and application of this section, the public policy of this state is declared to be: To ease the burden of

B & B, but in the spring of 1975, they terminated their employment with K, B & B and formed their own insurance agency, Grams Insurance Service. The plaintiffs were licensed by AHS to sell Blue Cross.

The plaintiffs began this action on February 5, 1976. The second cause of action of the third amended complaint alleges that subsequent to the Grams' termination of employment with K, B & B, Boss, Ketterhagen and Beggs, individually and as principals of K, B & B, carried on a course of conduct to cause the termination of plaintiffs' licenses to sell Blue Cross; that in June, 1975, AHS sent a letter to the plaintiffs (with a copy to defendant Ketterhagen), informing the Grams that their licenses were cancelled; and that AHS then informed the plaintiffs to disregard the letter and continue selling Blue Cross.

The complaint further alleges that between May and October, 1975, all the defendants "agreed, combined and conspired to cause the termination" of plaintiffs' licenses

payment for hospital services, particularly in the low income groups, where with the advance of scientific methods the payment for adequate hospital services is a pressing problem with grave social ramifications, nonprofit hospital service corporations, based on the tested experience in many parts of the United States, economically sound and socially beneficent, are needed. While in no way changing the present status of voluntary hospitals in the state, these corporations will enable a larger number to procure for themselves adequate hospital services and leave the use of the free and part-free services given by the hospitals to those whose economic status makes self-procurement of such services impossible. Without imposing the burden on the public treasury and free from any motive of profit, these corporations will contribute to the solution of a pressing social and economic problem in the state and merit the support of the citizens."

In 1975, the legislature completely revised Wisconsin insurance law. Sec. 182.032, Stats., was repealed by ch. 223, sec. 4, Laws of 1975 effective May 5, 1976. Throughout this opinion, the citations to sec. 182.032, Stats. 1973, refer to the statute as it existed prior to May 5, 1976.

For a description of AHS, see *Associated Hospital Service, Inc. v. City of Milwaukee*, 13 Wis.2d 447, 453, 109 N.W.2d 271 (1961).

to sell Blue Cross; that AHS entered into such conduct because of pressure from the other defendants; that pursuant to the agreement among the defendants, on September 13, 1975, AHS cancelled the plaintiffs' licenses to sell Blue Cross insurance, thereby restraining or preventing the Grams Insurance Service from acting as a general agency for the sale of insurance.

The complaint also alleges that the defendants conspired together to contact, and did personally contact, plaintiffs' customers, ridiculed the Grams to Grams' customers, and wrongfully described the insurance which the plaintiffs had sold to their customers; that the defendants wrongfully caused numerous unfounded complaints to be lodged with the Wisconsin Commissioner of Insurance against the plaintiffs; that the defendants attempted to interfere with "the check-off of insurance premiums system;" and that all such conduct was intended and designed by defendants to force plaintiffs out of the insurance business.

The complaint asserts that the defendants' conduct constituted a combination or conspiracy in restraint of trade, in violation of sec. 133.01(1), Stats.,[3] resulting in substantial damages to the plaintiffs. The plaintiffs seek compensatory and treble damages plus the costs of the action, including reasonable attorney fees.

The circuit court granted the defendants' motions for summary judgment because it was "persuaded that even if the allegations can be proved, recourse by the plain-

---

[3] Sec. 133.01, Stats., provides:

"133.01 **Unlawful contracts; conspiracies.** (1) Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. . . ."

Sec. 133.01, Stats., was intended as a reenactment of the first two sections of the federal Sherman Antitrust Act of 1890, 15 USCA secs. 1 and 2, with application to intrastate as distinguished from interstate transactions. *Reese v. Associated Hospital Service,* 45 Wis.2d 526, 532, 173 N.W.2d 661 (1970).

tiffs is pursuant to Ch. 207, Stats. [1973][4] and not Wisconsin's mini-Sherman Act [sec. 133.01, Stats.]." The circuit court also stated that even if a claim for "restraint of trade" under sec. 133.01, Stats., could be brought against a hospital insurance corporation, the circuit court did not believe that the allegations of the complaint stated "the type of fact situation contemplated by" sec. 133.01, Stats.

The court of appeals reversed the circuit court's orders granting summary judgment. The court of appeals determined that the complaint states a claim under sec. 133.01, Stats., reasoning that "sec. 182.032, Stats. [1973], cannot be said to authorize AHS to intentionally drive general agents out of the insurance business". The court of appeals concluded that the affidavits presented on the motion for summary judgment show a factual dispute as to the intent of the parties.

Sec. 802.08(2), Stats., provides that summary judgment shall be rendered when no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law.[5]

---

[4] Chapter 207, Stats. 1973, prohibits unfair methods of competition and unfair or deceptive acts or practices. Sec. 200.26(4), Stats. 1973, makes chapter 207 applicable to hospital service corporations organized under sec. 182.032, Stats. 1973, such as AHS. Chapter 207 was repealed and recreated by ch. 371, sec. 25, Laws of 1975, effective June 17, 1976. The newer statute is not applicable to this case.

[5] Sec. 802.08(2), Stats. ". . . The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

This court has in numerous cases set forth the procedure to be used in reviewing the trial court's granting a summary judgment. The court must initially examine the pleadings to determine whether a claim has been stated and whether a material issue of fact is presented. If the complaint states a claim and the pleadings show the existence of factual issues, the court examines the moving party's (in this case the defendants') affidavits or other proof to determine whether the moving party has made a *prima facie* case for summary judgment under sec. 802.08(2). To make a *prima facie* case for summary judgment, a moving defendant must show a defense which would defeat the plaintiff. If the moving party has made a *prima facie* case for summary judgment, the court must examine the affidavits and other proof of the opposing party (plaintiffs in this case) to determine whether there exist disputed material facts, or undisputed material facts from which reasonable alternative inferences may be drawn, sufficient to entitle the opposing party to a trial. *Ricchio v. Oberst,* 76 Wis. 2d 545, 550–551, 251 N.W.2d 781 (1977); *Krezinski v. Hay,* 77 Wis.2d 569, 572, 253 N.W.2d 522 (1977); *Coleman v. Outboard Marine Corp.,* 92 Wis.2d 565, 570, 285 N.W.2d 631 (1979).

On summary judgment the moving party has the burden to establish the absence of a genuine, that is, disputed, issue as to any material fact. On summary judgment the court does not decide the issue of fact; it decides whether there is a genuine issue of fact. A summary judgment should not be granted unless the moving party demonstrates a right to a judgment with such clarity as to leave no room for controversy; some courts have said that summary judgment must be denied unless the moving party demonstrates his entitlement to it beyond a reasonable doubt. Doubts as to the existence of

a genuine issue of material fact should be resolved against the party moving for summary judgment.

The papers filed by the moving party are carefully scrutinized. The inferences to be drawn from the underlying facts contained in the moving party's material should be viewed in the light most favorable to the party opposing the motion. If the movant's papers before the court fail to establish clearly that there is no genuine issue as to any material fact, the motion will be denied. If the material presented on the motion is subject to conflicting interpretations or reasonable people might differ as to its significance, it would be improper to grant summary judgment. 10 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 2725, p. 515 (1973); *Kraemer Bros. Inc. v. United States Fire Insurance Co.,* 89 Wis.2d 555, 565–67, 278 N.W.2d 857 (1979). *Coleman v. Outboard Marine Corp.,* 92 Wis.2d 565, 571, 285 N.W.2d 631 (1979).

## II.

The first step of the procedure described above is to examine the pleadings to determine whether the complaint states a claim. The defendants argue that the complaint does not state a claim under sec. 133.01(1), Stats., because the defendants' alleged conduct is subject to regulation under ch. 207, Stats. 1973, not under sec. 133.01(1), Stats., and because the defendants' alleged conduct does not constitute a combination or conspiracy in restraint of trade or commerce in violation of sec. 133.01, Stats.

## A.

We turn first to consider whether sec. 133.01(1), Stats., is applicable when defendants' alleged conduct

is proscribed by ch. 207, Stats. 1973, entitled "Unfair Insurance Methods."

Sec. 133.01, Stats., is Wisconsin's mini-Sherman Act declaring illegal a combination or conspiracy in restraint of trade. Sec. 133.01(1), Stats., provides "Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is hereby declared illegal. . . ." A violation of sec. 133.01, Stats., may be prosecuted by the government for a forfeiture and by the injured party for treble damages and costs of suit, including reasonable attorneys' fee.

Chapter 207, Stats. 1973, prohibits any person or entity engaged in the business of insurance, including agents, from engaging in any trade practice defined as or determined to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance. Secs. 207.02, 207.03, Stats. 1973. Sec. 207.04 defines 12 such methods, acts and practices and sec. 207.-09 sets forth a procedure for the Commissioner of Insurance to follow to determine whether a methᵈ, act or practice not defined in sec. 207.04 is unfair or deceptive. The Commissioner of Insurance has the power to issue prohibitory, mandatory or other orders necessary to secure compliance with the law, sec. 601.41(4), Stats. 1973, and may seek court assistance in obtaining compliance with an order, sec. 601.64, Stats. 1973. Sec. 601.64, Stats. 1973, also prescribes forfeitures and penalties, and revocation, suspension or limitation of licenses for specified violations of an order of the Commissioner or an insurance statute. The person aggrieved by an unfair method of competition or an unfair or deceptive act or practice does not have a remedy for damages under chapter 207, Stats. 1973.

AHS does not contend that the insurance industry or AHS, a corporation organized under sec. 182.032, Stats. 1973, is totally exempt from the provisions of sec. 133.01,

Stats.[6] Rather, AHS argues that where the complaint alleges conduct which is outlawed by chapter 207, Stats. 1973, a lawsuit cannot be brought against AHS under sec. 133.01, Stats. AHS' briefs analyze the facts alleged in the complaint, conclude that each allegation falls within either sec. 207.04 or sec. 207.09, Stats. 1973, and urge us to hold that plaintiffs' exclusive remedy is therefore under ch. 207, Stats. 1973.

The plaintiffs, on the other hand, assert that ch. 207, Stats. 1973, and sec. 133.01, Stats., are not mutually exclusive. Plaintiffs' position is that even though the defendants' alleged conduct may come within ch. 207, Stats. 1973, sec. 133.01, Stats., is applicable in the instant case.

The parties rely on *Reese v. Associated Hospital Service,* 45 Wis.2d 526, 173 N.W.2d 661 (1970), to support their respective positions. In *Reese* a licensed insurance agent, sought injunctive relief against AHS, alleging that contracts between AHS and certain hospitals (allowing AHS a three percent discount on hospital bills paid by it) constituted an unreasonable restraint of trade in violation of sec. 133.01, Stats. Commercial insurance companies writing health care policies did not receive this discount. AHS argued in *Reese* that it was exempt from the Wisconsin antitrust act as a sec. 182.032, Stats., organization. The circuit court for Dane county agreed with AHS and held that sec. 182.032(1), Stats., "supersedes" any contrary policy expressed in sec. 133.01, Stats. On appeal, this court disavowed the trial court's holding, saying:

"While holding that the mere granting of a discount to Blue Cross by participating hospitals did not constitute any restraint on trade, the trial court added that,

---

[6] AHS's position in this regard conforms to the court's view stated in *Reese v. Assoc. Hospital Service,* 45 Wis.2d 526, 531–32, 535, 173 N.W.2d 661 (1970), and is consistent with the legislative history of the insurance laws.

assuming it would be a restraint of trade, sec. 182.032 (1), Stats., 'supersedes' any contrary policy expressed in sec. 133.01. *This is using a meat cleaver to carve out a broad area of near-complete exemption from antitrust provisions where a scalpel can more effectively be used to permit a hospital service corporation to do exactly what the legislature has authorized, in fact required, it to do."* 45 Wis.2d 526 at 531–32. (Emphasis supplied.)

To determine whether sec. 133.01, Stats., was applicable to AHS, the *Reese* court analyzed AHS' conduct to determine whether it was within the express provisions and stated purpose of sec. 182.032. If the conduct was within the express provisions and stated purpose of sec. 182.032, the conduct, said the *Reese* court, could not be an unreasonable restraint of trade.

Although sec. 182.032 does not speak of discount rates or any other specific terms of contracts between AHS and the hospital, it does expressly provide for AHS entering into contracts with the hospitals, sec. 182.032(2) (a)(4), Stats. 1973, and accordingly in *Reese* we held that the contracts in issue were within and pursuant to these express provisions of sec. 182.032, Stats. 1973.

The *Reese* court then explored the question of whether the contracts in issue were within the "stated purpose" of sec. 182.032, Stats. 1973, reasoning that "[e]ven in a situation where the legislature had expressly exempted a certain organization from the reach of sec. 133.01, such exemption was held to relate only to acts of such organization in furtherance of its legislatively stated purpose." 45 Wis.2d at 533. The *Reese* court reasoned that the discount would enable AHS to further the legislative goal of easing the burden of payment for hospital services and held that the discount came within the stated purpose of sec. 182.032.

The *Reese* court concluded that the "discount contracts," being within the express provisions and stated purpose of sec. 182.032, could not be an unreasonable

restraint of trade under sec. 133.01, Stats., although the contracts might constitute an unfair method of competition or an unfair or deceptive act under ch. 207, Stats. 1973. This court said:

"It cannot be held to be unreasonable for a hospital service corporation to enter contracts which are specifically authorized by sec. 182.032 and which clearly fulfill the stated purpose of such statute. So long as Blue Cross stays within sec. 182.032, legislatively authorized acts and activities must be held to meet the 'rule of reason' test and not to be illegal. . . . Having held that the contract provision providing for a discount between Blue Cross and the participating hospitals comes within the stated purpose and express provisions of sec. 182.032, it follows that it is not to be held an unreasonable restraint of trade under sec. 133.01. . . . Where an act or practice is within the purposes and provisions of sec. 182.032, review or challenge of it come not in a sec. 133.-01 lawsuit, but in a ch. 207 proceeding." *Reese, supra,* 45 Wis.2d 526, 532, 533, 534.

To decide whether sec. 133.01, Stats., is applicable in the current case, we must determine, under the test set forth in *Reese,* whether the alleged conduct of AHS is within the express provisions and stated purpose of sec. 182.032, Stats. 1973. The plaintiffs argue that the AHS conduct in the instant case falls within the express provisions of but not within the stated purpose of sec. 182. 032, Stats.

The conduct of AHS in issue apparently relates to the appointment of agents and to terminating the appointment of agents. Sec. 182.032 does not on its face expressly provide for the appointment of agents. However, sec. 182.032(3) (d) does provide that "hospital service corporations shall be governed by . . . s. 200.26 and by no other law relating to insurance unless such law is referred to in s. 200.26 . . . ." Sec. 200.26(4), Stats. 1973, provides that hospital service corporations organized under sec. 182.032 "are subject to . . . s. 209.-

04(11) relating to agents," and sec. 209.04(11), in turn, makes sec. 209.04, Stats. 1973, applicable to the AHS. Sec. 209.04 authorizes AHS to appoint agents and terminate their appointments. After tracking these interconnected statutes, we conclude that sec. 182.032 includes an express provision relating to AHS' authority to appoint agents and to terminate the appointment of agents. Accordingly AHS' conduct in the instant case falls within the express provisions of sec. 182.032, Stats.

The next question is whether AHS' termination of the appointment of the plaintiffs as agents is within the stated purpose of sec. 182.032, Stats. 1973. We conclude, as did the court of appeals, that the termination alleged in the instant case is not within the purpose of sec. 182.-032, Stats. 1973.

The complaint alleges that AHS agreed, conspired and combined to cause the termination of the plaintiffs' licenses; that AHS terminated the licenses because of pressure from the other defendants; that pursuant to the agreement among the defendants, AHS terminated the plaintiffs' licenses to sell insurance for AHS; and that AHS and the other defendants engaged in this conduct with the intent and design to force plaintiffs out of the insurance business.

The plaintiffs do not argue that AHS's action in terminating their licenses to sell insurance for AHS, in and of itself, constituted a violation of sec. 133.01(1), Stats. The plaintiffs concede that if AHS had acted independently to terminate the licenses, AHS would have been acting within and pursuant to the express provisions and stated purpose of sec. 182.032, Stats. 1973, and that they could have no claim under sec. 133.01, Stats.

In enacting sec. 182.032, Stats. 1973, authorizing AHS to appoint and terminate the appointment of agents, the legislature did not intend to permit AHS to use its authority in combination with others in restraint of trade, contrary to sec. 133.01, Stats. Sec. 182.032, Stats. 1973,

was not designed to protect AHS from liability if it conspires and combines with others to drive general agents out of the insurance business.

Because the alleged activities of AHS are not within and pursuant to the stated purpose of sec. 182.032, Stats. 1973, we conclude that sec. 133.01, Stats. is applicable to this complaint.

AHS attempts to read the *Reese* case as saying that an administrative proceeding under chapter 207, Stats. 1973, provides an exclusive remedy when the particular acts or practices alleged are not authorized by sec. 182.-032, Stats., and fall within chapter 207. But *Reese* never stated such a rule. In *Reese,* the court found that because sec. 182.032, Stats., permitted and required nonprofit hospital service corporations to contract with the hospitals and because AHS was acting within and pursuant to the purposes of sec. 182.032, Stats., in contracting with the codefendant hospitals for services to its subscribers, no claim was stated under sec. 133.01. The *Reese* court added as a note that "even when operating under sec. 182.032, hospital service corporations are subject to certain controls by the state insurance department," including ch. 207, relating to unfair methods of competition and unfair or deceptive acts or practices. *Id.*, 533–535. The *Reese* court refused to rule on whether the three percent discount was valid, because this was an issue for the insurance commissioner. Contrary to AHS' assertion, the rationale of *Reese* allows both ch. 207 and sec. 133.01(1), Stats., to apply in those cases in which the alleged conduct of a hospital service corporation does not fall within the stated purpose and express provisions of sec. 182.032, Stats. *Reese* does not intimate that ch. 207 and ch. 131 are mutually exclusive.

Following the reasoning of *Reese,* we conclude that sec. 133.01(1), Stats., is applicable to this complaint.

## B.

Defendants argue that the conduct alleged in the complaint does not constitute a combination or conspiracy in restraint of trade or commerce in violation of sec. 133.01, Stats.

We have repeatedly stated that sec. 133.01, Stats., was intended as a reenactment of the first two sections of the federal Sherman Antitrust Act of 1890, 15 USC secs. 1 and 2, with application to intrastate as distinguished from interstate transactions and that the question of what acts constitute a combination or conspiracy in restraint of trade is controlled by federal court decisions under the Sherman Act. *Reese v. Associated Hospital Service, supra,* 45 Wis.2d at 532; *John Mohr & Sons, Inc. v. Jahnke,* 55 Wis.2d 402, 410, 198 N.W.2d 363 (1972); *State v. Waste Management of Wisconsin, Inc.,* 81 Wis.2d 555, 569, 261 N.W.2d 147 (1978), *cert. denied* 439 U.S. 865 (1978).

### 1.

The defendants maintain that the allegations of the complaint state a claim for an intentional business tort but not for a violation of sec. 133.01, Stats., an antitrust law.

We have previously described the allegations of the complaint and it is sufficient here to summarize the complaint as alleging that the defendants conspired and carried on a course of conduct of unfair methods of competition with the intention to injure plaintiffs as competitors, to impair their ability to compete and to eliminate them from the insurance business. These allegations are not the usual allegations in an antitrust action. They are more apt to be classified as a "garden variety of unfair competitive practices" reachable under statutes other than the antitrust law. *Vogue Instrument Corp. v. Lem Instruments Corp.,* 40 FRD 497, 499 (S.D.N.Y.

1966). Yet an increasing number of federal cases are viewing complaints similar to the instant one as stating a cause of action under section 1 of the Sherman Antitrust Act.

In 1973, a federal district court noted that "[i]nstances where courts have been called upon to apply section 1 of the Sherman Act to conspiracies to injure or destroy a competitor in interstate commerce have been rare—only three or four reported cases in almost a century." *C. Albert Sauter Co., Inc. v. Richard S. Sauter Co., Inc.*, 368 F. Supp. 501, 512 (E.D. Penn. 1973).[7] Since 1973, several federal courts have interpreted section 1 of the Sherman Antitrust Act to permit allegations that the defendants conspired or combined to engage in acts of unfair competition with intent to injure or to destroy the plaintiff as a competitor, to constitute an antitrust violation.[8] We similarly interpret sec. 133.01 (1), Stats.

[7] The cases referred to in *Sauter* are *Albert Pick-Barth v. Mitchell Woodbury Corp.*, 57 F.2d 96 (1st Cir. 1932), *cert. denied* 286 U.S. 552 (1932); *Atlantic Heel Co. v. Allied Heel Co.*, 284 F.2d 879 (1st Cir. 1960); *Perryton Wholesale, Inc. v. Pioneer Distributing Co.*, 353 F.2d 618 (10th Cir. 1965), *cert. denied* 383 U.S. 495 (1966).

[8] *See, e.g., Redwing Carriers, Inc. v. McKenzie Tank Lines, Inc.*, 443 F. Supp. 639 (N.D. Fla. 1977), 594 F.2d 115 (5th Cir. 1979); *Northwest Power Products, Inc. v. Omark Industries*, 576 F.2d 83 (5th Cir. 1978), reh. den. 579 F.2d 643 (1978), *cert. denied* 439 U.S. 1116 (1979); *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail*, 430 F. Supp. 1234, 1240 (N.D. Iowa 1977), aff'd 578 F.2d 1256 (8th Cir. 1978); *Burdett Sound, Inc. v. Altec Corp.*, 515 F.2d 1245 (5th Cir. 1975); *George R. Whitten, Jr. Inc. v. Paddock Pool Bldrs. Inc.*, 508 F.2d 547, 560 (1st Cir. 1974); *Juneau Square v. First Wis. Nat. Bank of Milwaukee*, 435 F. Supp. 1307 (E.D. Wis. 1977), 475 F. Supp. 451 (E.D. Wis. 1979); *Eye Encounter Inc. v. Contour Art, Ltd.*, 81 F.R.D. 683 (E.D.N.Y. 1979); *Snyder v. Howard Johnson's Motor Lodges, Inc.*, 412 F. Supp. 724 (S.D. Ill. 1976); *Associated Radio Service Co. v. Page Airways, Inc.*, 414 F. Supp. 1088 (N.D. Tex. 1976); *Mr. Hanger, Inc. v. Rizzuto*, 410 F. Supp.

There has been disagreement, however, among the federal courts on whether a complaint which alleges a conspiracy to injure or destroy a competitor must allege anticompetitive effects in order to state a claim under sec. 1, Sherman Act. In the antitrust terminology, the issue upon which the federal courts have divided is whether the rule of reason applies or the conduct is illegal *per se*.

The terse language of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations . . . ." 15 USC Sec. 1; sec. 133.01(1), Stats. Mr. Justice Brandeis noted that: "Every agreement concerning trade, every regulation of trade, restraints. To bind, to restrain, is of their very essence. The true test of legality is whether the restraint imposed is such as merely regulates and perhaps thereby promotes competition or whether it is such as may suppress or even destroy competition." *Chicago Bd. of Trade v. United States*, 246 U.S. 231, 238 (1918).

The history of the antitrust laws led the United States Supreme Court to adopt a "rule of reason" analysis for determining whether the conduct violated the Sherman Act. An analysis of the reasonableness of the restraints includes an examination of the purpose of the restraint, market power, and the anticompetitive effect of the restraint. *See, e.g., Standard Oil Co. v. United States*, 221 U.S. 1, 60–77 (1911); *Chicago Board of Trade v. United States*, 246 U.S. 231, 238 (1918); *National Soc'y of Professional Eng'rs v. United States*, 435 U.S. 679, 687–692 (1978).

The United States Supreme Court also developed the doctrine that certain conduct is a *per se* violation of the

1158 (S.D.N.Y. 1575); *Tower Tire & Auto Center, Inc. v. Atlantic Richfield Co.*, 392 F. Supp. 1098 (S.D. Tex. 1975).

antitrust laws, that is, that a presumption of anticompetitive effect arises from certain conduct. The need for and value of the *per se* rule were explained by the Court as follows:

" '[T]here are certain agreements or practices which because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use. This principle of *per se* unreasonableness not only makes the type of restraints which are proscribed by the Sherman Act more certain to the benefit of everyone concerned, but it also avoids the necessity for an incredibly complicated and prolonged economic investigation into the entire history of the industry involved, as well as related industries, in an effort to determine at large whether a particular restraint has been unreasonable—an inquiry so often wholly fruitless when undertaken.' " *Northern Pacific R. Co. v. United States*, 356 U.S. 1, 5 (1958). [Quoted with approval, *United States v. Topco Assoc., Inc.*, 405 U.S. 596, 607 (1972).]

Although illegal *per se* may have different meanings in different contexts, the term is used in cases such as the instant one to mean that the injured party need not prove the adverse competitive effect of the particular conduct; the law presumes that the alleged conduct has a subversive effect on competition.[9]

In 1932 the first circuit court of appeals in *Albert Pick-Barth Co. v. Mitchell Woodbury Corp.*, 57 F.2d 96 (1st Cir. 1932), generally referred to in the literature as *Pick-Barth*, characterized the alleged conspiracy with intent to eliminate a competitor by unfair competition as illegal *per se* under the Sherman Act. This characteriza-

---

[9] "What all this adds up to then is that the application of a label of per se illegality to particular conduct may or may not deny a defendant an opportunity to justify the practice and demonstrate that its effect is likely to be beneficial." E. Gellhorn, *Antitrust Law & Economics in a Nutshell* 189 (1976).

tion was followed in later cases by the first circuit and the tenth circuit courts of appeals.[10] In 1974 the first circuit court of appeals, *George R. Whitten, Jr., Inc. v. Paddock Pool Builders, Inc.,* 508 F.2d 547 (1st Cir. 1974), had the opportunity to review the *Pick-Barth per se* doctrine. The *Whitten* court applied the rule of reason test to the facts of the case and required the plaintiff to prove that defendant's conduct amounted to an unreasonable restraint of trade, that is, had an anti-competitive effect on the market.

The *Whitten* case can be read in a number of ways: *Whitten* overrules the *Pick-Barth per se* rule; *Whitten* is distinguishable on its facts from *Pick-Barth* and the *per se* rule survives for limited fact situations (*e.g.,* competitive conduct "going to the jugular," the defendant being a significant actor in the market; an intent to eliminate competition proved, not just an intent to injure) ; or the first circuit court of appeals is ready to reevaluate the *Pick-Barth per se* doctrine when presented with an appropriate fact situation.[11] The more recent federal cases appear to be applying the rule of reason rather than the *Pick-Barth per se* rule. The United States Supreme Court has not yet considered the issue.

As might be expected, plaintiffs argue that the *per se* rule applies in the instant case; defendants argue that

[10] *See* cases cited in note 7 *supra.*

[11] For an analysis and critique of *Pick-Barth* and the progeny, *see* Yoerg, *Should a Trade Secrets Misappropriation Lie in a Procrustean Antitrust Bed?,* 22 Antitrust Bull. 1 (1977) ; Boone, *Single-Corporation Competitive Torts and the Sherman Act: A Projection Based Upon A Review of the Albert Pick, Atlantic, Heel, and Perryton Cases,* 2 Ga. L. Rev. 372 (1968) ; Comment, *A Reexamination of Pick-Barth Per Se Illegality Under Section 1 of the Sherman Antitrust Act,* 38 U. Pitt. L. Rev. 87 (1976); *Note, Unfair Competition Under the Sherman Act,* 59 Iowa L. Rev. 1194 (1974) ; Note, *Acts of Unfair Competition With Intent to Injure a Competitor Held a Per Se Violation,* 42 Fordham L. Rev. 909 (1974).

the rule of reason applies and that the complaint fails to state a claim under the rule of reason.

For reasons we shall explain, we conclude that the complaint states an antitrust claim under either the rule of reason or the *per se* rule and that at this stage of the proceedings it is not necessary or desirable for this court to determine whether the rule of reason or the *per se* rule applies.

## 2.

Defendants argue that the complaint does not state a claim under the rule of reason because it fails to allege that the conduct charged had an adverse anticompetitive effect.

The new rules of civil procedure provide for notice pleading. Rules of Civil Procedure, 67 Wis.2d 587. Sec. 802.02(1), Stats. 1975, provides as follows:

"**General rules of pleading.** (1) CLAIMS FOR RELIEF. A pleading which sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (a) a short and plain statement of the claim, identifying the transaction, occurrence or event out of which the claim arises and showing that the pleader is entitled to relief and (b) a demand for judgment for the relief to which the pleader deems to be entitled. Relief in the alternative or of several different types may be demanded."

We have said that pleadings are to be liberally construed with a view to substantial justice to the parties.[12] The complaint is not required to state all the ultimate facts constituting each cause of action; and the com-

---

[12] *Schweiger v. Loewi & Co., Inc.*, 65 Wis.2d 56, 221 N.W.2d 882 (1974).

Sec. 802.02(6), Stats.:

"CONSTRUCTION OF PLEADINGS. All pleadings shall be so construed as to do substantial justice."

plaint should be dismissed as legally insufficient only if "it is quite clear that under no conditions can the plaintiff recover."[13] A claim should not be dismissed "unless it appears to a certainty that no relief can be granted under any set of facts that plaintiff can prove in support of his allegations." *Morgan v. Pennsylvania General Ins. Co.,* 87 Wis.2d 723, 732, 275 N.W.2d 660 (1979).

The complaint in the case at bar alleges that plaintiffs' licenses with AHS have been terminated, that they have been ridiculed and disparaged by the defendants; that defendants' conduct was intended and designed to force plaintiffs out of business; and that defendants' conduct constitutes a conspiracy in "restraint of trade." The inference can be drawn from the allegations set forth in the complaint that but for the illegal restraint the plaintiffs could be competing in the sale of AHS insurance contracts and that its being restrained has adverse effects on competition.

Although the complaint is barebone, is conclusory in part, and may have failed to state sufficient facts under prior law, the complaint passes muster under the new rules. The complaint in this case gives the defendants adequate notice of the circumstances of the claim and the nature of the claim asserted. 5 Wright & Miller, *Federal Practice & Procedure* sec. 1228 (1969). Obviously the pleading might have been improved upon by a specific allegation relating to the anticompetitive effect of the

[13] Clausen & Lowe, *The New Wisconsin Rules of Civil Procedure, Chapters 801–803,* 59 Marq. L. Rev. 1, 54 (1976). *See also, Morgan v. Pennsylvania Gen'l Ins. Co.,* 87 Wis.2d 723, 731, 275 N.W.2d 660 (1979); *Anderson v. Continental Ins. Co.,* 85 Wis.2d 675, 683, 271 N.W.2d 368 (1978); *Hartridge v. State Farm Mutual Automobile Ins. Co.,* 86 Wis.2d 1, 4–5, 271 N.W.2d 598 (1978); 5 Wright & Miller, *Federal Practice & Procedure: Civil* sec. 1215, p. 113 (1969).

defendants' conduct, but this allegation would probably have added little to the notice already given. *Cf. Quality Mercury, Inc. v. Ford Motor Company,* 542 F.2d 466 (8th Cir. 1976).

The defendants rely on *Stifel, Nicolaus & Co. v. Dain, Kalman & Quail,* 578 F.2d 1256 (8th Cir. 1978), to support their argument that summary judgment should be granted. In *Stifel,* the federal court of appeals refused to read the complaint liberally to include an allegation of anticompetitive effect. A reading of the opinion shows that this decision was based on two factors: One, the plaintiff's consistent and repeated position at the trial court that the plaintiff's claim was based on a *per se* violation; and two, the trial court's reliance upon plaintiff's concession "that plaintiff has alleged no impact on interstate commerce in conformance with the rule of reason." 578 F.2d at 1261. Under these circumstances the federal court of appeals refused to allow the plaintiff to change position on appeal. The *Stifel* court suggested, however, that the plaintiff seek leave from the trial court to amend the complaint to allege a rule of reason violation. In the instant case, neither the trial court nor the court of appeals discusses or relies upon the *per se* rule or upon the rule of reason. We therefore conclude that *Stifel* is inapposite.[14]

For the reasons set forth, we hold that the plaintiffs have alleged enough to withstand a motion for summary judgment.

---

[14] *See also, Associated Radio Service Co. v. Page Airways, Inc.,* 414 F. Supp. 1088, 1090 (N.D. Tex. 1976) (dismissed with leave to replead); *Hsing Chow v. The Union Central Life Ins. Co.,* 1978–2 CCH Trade Cases, par. 62,300 (dismissal; trial court held that facts alleged could not support allegation of adverse impact on competition).

For amendment of pleading after a summary judgment is granted on the ground that the complaint fails to state a claim, *see* 6 Moore, *Federal Practice* par. 56.10 (2d ed. 1976).

### 3.

Because we conclude that the complaint can be read as stating a claim under either the *per se* rule or the rule of reason, we need not at this time reach the question of which rule is applicable. We are persuaded that such a decision at the pleading stage of the instant case would be premature. A full exploration of the facts may demonstrate that the defendants' conduct is not reachable under sec. 133.01, Stats., because, *e.g.,* no conspiracy or wrongful intent is proved. On the present record we cannot determine whether or not a presumption of anti-competitive effect is raised by the defendants' alleged unfair competitive practices. We do not have a record giving the court the requisite information to undertake the legal or policy analysis needed before the conduct in issue in this case is declared a rule of reason or a *per se* antitrust violation. *Pulp Wood Co. v. Green Bay P & F Co.,* 157 Wis. 604, 618, 147 N.W. 1058 (1947) ; *State v. Lewis and Leidersdorf Co.,* 201 Wis. 543, 551, 230 N.W. 692 (1930) ; *White Motor Co. v. United States,* 372 U.S. 253, 264 (1963) ; *Atlantic Heel Co. v. Allied Heel Co.,* 284 F.2d 879, 884–885 (1st Cir. 1960) (Woodbury, C.J. concurring opinion) ; *Eye Encounter, Inc. v. Contour Art, Ltd.,* 81 F.R.D. 683, 690 (E.D.N.Y. 1979) ; *Associated Radio Service Co. v. Page Airways, Inc.,* 414 F. Supp. 1088, 1094 (N.D. Tex. 1976).

### III.

Following the procedure we have outlined for reviewing whether a summary judgment should have been granted, we next consider whether the pleadings or evidentiary matter show the existence of a disputed issue as to any material fact.

As we have described previously, the complaint alleges a conspiracy and course of conduct intended to injure

plaintiffs as competitors. In their answer, the defendants deny that they conspired or acted with the intent to injure plaintiffs as competitors or to force plaintiffs out of the insurance business and deny unfair competition practices. AHS also alleges that it acted independently, without pressure from the other defendants, and according to legitimate and justifiable business considerations in requesting the insurance commissioner to terminate plaintiffs' licenses to sell pre-paid hospital service contracts for AHS.

The pleadings show the existence of several disputed issues of material fact, *e.g.*, whether there was a combination or conspiracy, whether the defendants intended to injure or destroy plaintiffs as competitors, and whether unfair competitive methods were used by the defendants. After careful review of the affidavits, depositions and answers to interrogatories, we conclude that these same issues of material fact remain in dispute. Accordingly, summary judgment cannot be granted.

The defendants rely on *Northwest Power Products, Inc. v. Omark Industries,* 576 F.2d 83 (5th Cir. 1978), to support their position that summary judgment should be granted. *Northwest Power* is distinguishable from this case. In *Northwest Power* the motion for summary judgment was based on depositions and affidavits relating to the issue of whether defendants' conduct adversely affected competition. Implicitly acknowledging that the complaint stated an antitrust claim and holding that the rule of reason was applicable, the court of appeals affirmed the summary judgment because the plaintiff failed to show any anticompetitive effect and therefore could not establish an antitrust violation under the rule of reason. In the case at bar the parties did not raise the issue of anticompetitive effect on the motions for summary judgment. The parties' documen-

tation on the motions for summary judgment in the instant case related to the following issues: was there a conspiracy or combination among the defendants within the meaning of the Sherman Act; did the defendants intend to injure plaintiffs as competitors and drive them out of business; did the methods used by defendants constitute unfair competition. The defendants in the case at bar attempted to show that there was no genuine issue on these material facts but failed to do so. In the instant case, unlike in *Northwest Power,* there is no factual basis for resolution of the issue of anticompetitive effect. *Northwest Power* is inapposite.

For the reasons set forth, we conclude that summary judgment should not have been granted on the basis of this record.

*By the Court.*—Decision of the court of appeals affirmed.