Jay A. CHAPMAN, by his Guardian ad Litem, Carl L. Ricciardi, Ronald L. Chapman, and Rose M. Chapman, Plaintiffs-Co-Appellants,

v.

WISCONSIN PHYSICIANS SERVICE INSURANCE CORPORATION, and Blue Cross & Blue Shield United of Wisconsin, Defendants,

PARTNERS MUTUAL INSURANCE COMPANY, f/k/a Badger State Mutual Casualty Company, Defendant-Third Party Plaintiff-Respondent,

Jamie WORZALLA, by his Guardian ad Litem, David J. Worzalla, Third Party Defendant-Appellant.

Court of Appeals

*No. 93–1481. Submitted on briefs April 12, 1994.—Decided September 15, 1994.*

(Also reported in 523 N.W.2d 152.)

For the third party defendant-appellant the cause was submitted on the brief of *Thomas Terwilliger* of *Terwilliger, Wakeen, Piehler & Conway, S.C.* of Wausau.

For the plaintiffs-co-appellants the cause was submitted on the brief of *Virginia M. Antoine* and *Carl L. Ricciardi* of *Habush, Habush & Davis, S.C.* of Wausau.

For the defendant-third party plaintiff-respondent the cause was submitted on the brief of *Gerald M. O'Brien* of *Anderson, Shannon, O'Brien, Rice & Bertz* of Stevens Point.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J.   Jay Chapman appeals from a judgment dismissing his complaint against Partners Mutual Insurance Company for damages from the injury he sustained when a BB Jamie Worzalla shot from a BB gun hit his eye. The trial court granted summary judgment to Partners, the homeowner's insurance company for Jamie's parents, on grounds that Partners' policy does not provide coverage. Jamie, as a third-party defendant, also appeals and seeks review of the same determination. The question is whether a genuine issue of material fact exists as to whether Jamie expected or intended to injure Jay. We

542

conclude that no factual issue exists. We therefore affirm.

Summary judgment methodology is too well known to require restating. Summary judgment must be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Section 802.08(2), STATS.; *Grams v. Boss*, 97 Wis. 2d 332, 337-39, 294 N.W.2d 473, 476-77 (1980).

Jay's complaint states a claim. It alleges that Jamie and Jay were playing with BB guns when Jamie negligently discharged his gun in the general direction of Jay and the BB entered Jay's left eye. The complaint alleges that Jamie was negligent in that, without intending to hit Jay, he discharged his BB gun striking Jay in the eye, he knew or should have known that a BB can cause serious injury, and he failed to ascertain Jay's location prior to the time he discharged his BB gun. The complaint alleges that the policy Partners had issued to Jamie's parents covers the injury.

Partners' answer states a defense. It denies the allegations and alleges that the policy it had issued provides in part as follows:

> 1.  **Coverage E - Personal Liability and Coverage F - Medical Payments to Others** do not apply to bodily injury or property damage:
>
> a.  which is expected or intended by the Insured;

## HOMEOWNERS AMENDATORY ENDORSEMENT INTENTIONAL ACT EXCLUSION

> The insurance afforded by this policy shall not apply to **bodily injury** or **property damage** expected or intended from the standpoint of the insured. This exclusion does not apply to bodily

543

injury resulting from the use of reasonable force to protect persons or property.

The accident happened in September 1991. The fourteen-year-old boys were friends and attended the same school. Jay took his BB gun to Jamie's house. His gun uses a lever action that may be pumped only once. Jamie's BB gun may be pumped up to ten times. Each pump increases the amount of force to propel a BB. When deposed, Jamie stated that although he usually pumped the gun six or seven times to shoot at objects, the day of the accident he pumped it a maximum of four times.

After watching television together, the boys went into the Worzallas' backyard with their guns and engaged in a "BB gun war," shooting at each other from behind rocks and trees. When Jay hit Jamie on his side with a BB, Jamie felt a sting and pain. They continued their "shootout," eventually moving into separate small buildings in the yard. About fifteen minutes after the "shootout" began Jay was hit in the eye with a BB.

When deposed, Jamie stated that during the interval before the accident, each time he shot he pumped his gun up to four times and aimed in Jay's general direction, never taking careful aim. When Jay was hit, the boys were about seventy-five feet apart. Jamie was shooting through a hole in his building at the building in which Jay was hiding. He could not see Jay when he shot the BB which hit Jay. Jamie stated: "When he was in the building, I intended to shoot towards the building, I didn't know if I would hit him. I guess I was intending just to shoot in a general direction, not really knowing what I was shooting at."

Jamie believed that with four pumps a BB from his gun would just sting. While he knew a BB could sting, he did not intend to cause a welt or a bruise or anything

of that nature. He did not think he could penetrate Jay's skin or cause a serious injury, but he knew that if he shot Jay in the face or eye at seventy-five feet, it could cause an injury. He pointed his gun at the building in which Jay was hiding and fired because he knew Jay was in it. He deposed, "I was intending to shoot him maybe in the arm or leg just to cause a slight sting, sharp pain like he did to me. But I was not—I didn't want to cause such serious injury."

For a bodily injury to be excluded from insurance coverage as "expected or intended" by the insured, the insured must (1) intentionally act and (2) intend some bodily injury to follow from that act. *Raby v. Moe*, 153 Wis. 2d 101, 110, 450 N.W.2d 452, 455 (1990). Put another way, "Intent requires both an intent to do an act and an intent to cause injury by that act. An intent to cause injury exists where the actor subjectively intends to cause injury or where injury is substantially certain to occur from the actor's conduct." *Gouger v. Hardtke*, 167 Wis. 2d 504, 512, 482 N.W.2d 84, 88 (1992). So long as the actor intends to inflict a personal injury, the requisite intent is established even though the actor did not intend the particular injury that occurred. *See Pachucki v. Republic Ins. Co.*, 89 Wis. 2d 703, 712, 278 N.W.2d 898, 903 (1979) (finding of intent to injure affirmed where defendants intended to "sting" plaintiff by shooting large pins propelled by rubber bands and no defendant intended the eye injury plaintiff suffered).[1]

---

[1] According to *Allstate Ins. Co. v. Steinemer*, 723 F.2d 873, 875 (11th Cir. 1984), the "majority rule" is that the intentional injury exclusion "applies if the insured intended to do a particular act, and intended to do some harm, even if the harm actually done was radically different from that intended."

The subjective intent of an individual, when dispositive, should ordinarily be determined by the trier of fact. *Gouger*, 167 Wis. 2d at 516-17, 482 N.W.2d at 90. For that reason, courts must be cautious in granting a motion for summary judgment when the dispositive issue is a state of mind. *Id.* at 517, 482 N.W.2d at 90. When an individual's state of mind is at issue, "and the party opposing the motion for summary judgment shows facts which cast doubt upon the affiant's credibility, the trier of fact must be allowed to evaluate the individual's testimony in light of the credibility of the individual and other circumstantial evidence." *Id.*

Here, however, no issue of fact need be tried regarding Jamie's intent to hit Jay with a BB and cause injury. Jamie deposed that he shot at the building in which Jay was hidden, and while he could not see Jay, he intended to hit Jay and knew that injury could result. That Jamie did not intend to injure Jay's eye is irrelevant, since Jamie intended nevertheless to cause injury, a sting. The injury to Jay's eye is excluded from coverage under Partners' policy.

Jay contends that a credibility issue exists which must be tried. Jay concedes that during deposition Jamie stated that he intended to hit Jay, but Jay contends Jamie's testimony is inherently contradictory, in that he testified he did not aim at Jay, could not see him, and did not know whether he would hit Jay. We see no contradiction. Jamie shot at the building where Jay was because he knew Jay was in it. Jamie's intent to hit Jay was tragically fulfilled, even though he could not see Jay when he fired. Certainly a person can shoot

at a building intending to hit its hidden occupant. No credibility issue exists for the factfinder to resolve.

*By the Court.*—Judgment affirmed.